BRUNOT, J.
 

 The accused was charged with violating a provision of Act 43 of 1912, which act defines and penalizes the offense commonly known as the confidence game. The case was regularly trifed, and from a conviction and sentence the accused appealed.
 

 There are six bills of exception in the record, and an assignment of error was filed in this court.
 

 The accused was the local agent of the Unity Industrial Life Insurance Company of New Orleans, La. She was charged with attempting to collect the insurance on the life of a living assured, “by means and use of the confidence game.” She had been the agent of the company for some time, and during the progress of the trial the state tendered proof to show that the accused was familiar with the method pursued ánd the procedure it followed in the settlement of claims due its insured or their beneficiaries under its policies. This statement is made preliminary to a consideration of the bills reserved for rear sons which will hereafter appear obvious. •
 

 Bill No. 1.
 

 This bill was reserved to the overruling of an objection to a state witness testifying to the custom of the insurance company in adjusting death claims made under its policies. The particular question asked, which gave rise to the objection, was, “Give the custom of handling them.” Defendant objected to the testimony upon the ground that it was hearsay. The witness represented the insurance company. He had testified that all agents of the company, including the accused, had been instructed as to the procedure required of them by the company in the handling of death claims. What actually preceded the objection appears in the testimony of the witness, which is attached to the bill, and from which we quote the following:
 

 “Q. Are-all of your agents instructed in the manner of handling these death claims? Do you give them instructions?
 

 “A. Yes, sir.
 

 “Q. Did you give Lula Solomon instructions?
 

 “A. Yes, sir.
 

 “Q. Give the customary manner of handling them?
 

 “A. The custom is whenever a member dies the beneficiary whoever the policy is willed to —is supposed to bring the policy to the agent and deliver the policy to the agent, and the agent gives him a death certificate, and the beneficiary is supposed to take that certificate and go have it filled out at his own expense — take it to the doctor and he fills out his part, then take it to the undertaker and he fills it out. Of course if it is a large policy, over $200.00, then they require a notary public’s signature on the death. Then this policy — death certificate — is supposed to be brought back to the agent.
 

 
 *158
 
 “I object to this, it is hearsay. (The objection is overruled. To'which ruling of the court counsel for defendant excepts and reserves a bill.)”
 

 The foregoing quotation shows that counsel objected solely upon the ground that the testimony was hearsay. It also shows that the objection was not made until after the testimony was given, and there is nothing in the record to show that counsel made any effort, by motion or otherwise, to have it stricken out or to have the jury instructed with reference thereto. We, however, do not consider this of any importance, for it is clear that the witness had actual knowledge of the forms used and the procedure to be followed by beneficiaries in establishing their claims under policies issued by his company, and, therefore, his testimony, in relation to these matters, was direct, and not hearsay.
 

 Bill No. 2.
 

 This bill was reserved to the overruling of an objection to a question asked Dr. T. R. Sortor, a state witness. The bill is disposed of by the per curiam of the judge, from which we quote the following:
 

 “The state’s witness, Dr. Sortor, was asked by the state if any of the various proofs of loss shown him were forgeries, all of which certificates of loss were sent to the company by Lula Solomon. * * *, but the witness answered that none of the proofs of loss, or certificates shown him were forgeries. Hence, the answer to the question did not harm the defendant, nor did it help the state.”
 

 We think the ruling was correct, but, if we are mistaken, it was a harmless error. Not only error, but injury, must be shown to justify the reversal of a verdict. State v. Kennon, 45 La. Ann. 1192, 14 So. 187. It is needless to cite other authorities, for this is the invariable rule.
 

 Bill No. 3.
 

 This bill was reserved to the overruling of an objection to a question the district attorney asked a state witness. When the objection was made, the jury was retired, and the testimony was taken out of the presence of the jurors. Thereafter the jury returned into court, whereupon the testimony so taken was not offered by the state. This bill is therefore frivolous.
 

 Bill No. 4.
 

 This bill might have been considered in connection with bill No. 1, because the testimony objected to, in both instances, was offered to show the practice and rule of the insurance company in its adjustment and settlement of loss and death claims, and to show knowledge and fraudulent intent on the part of the accused. In furtherance of this purpose, a state witness, who was a representative of the insurance company, and whose attention was called to a certain check issued by the insurance company in settlement of a claim other than the one charged in the indictment, which check was forwarded to the accused and transmitted by her to the claimant, was asked the following question:
 

 “Q. That check came from the Company?”
 

 The question was objected to,' for the reason that it was a different transaction, and not connected with the alleged fraudulent proof of loss for which the accused was prosecuted. In the per curiam to this bill the judge refers to his per curiam to bill No. 1, and says:
 

 “The check inquired about, * * *, was one that had been sent by the company to Lula Solomon for delivery to the beneficiary and was made payable to the beneficiary and bore Lula Solomon’s endorsement. This check also bore the endorsement of the payee, * ♦ *, the witness was simply asked if the check in question came from his company. 1-Iis answer was yes.
 
 * * *
 

 
 *160
 
 “This testimony was admissible for the purpose of showing that the loss on the policy —the proof of which loss was forged by Lula Solomon — would be handled as all other losses, by the company mailing Lula Solomon a check for delivery to the beneficiary.”
 

 The proof was offered to show that all claims against the insurance company were settled through its local agent by mailing the agent the company’s check for delivery to the beneficiary, and that the accused knew this to be the rule of the company. The record shows that Lula Solomon was an agent of the insurance company; the state witnesses testified that she forged various affidavits and certificates, on a proof of loss form, showing the death of an insured, who, in fact, was not dead, and that she attempted to collect the policy. The question which was objected to was relevant as corroborative of proof offered to show that the accused knew the rule of the company with reference to the proof and settlement of death claims, and, under that rule, that she had an opportunity to profit by the false proof of death. We see no merit in the bill.
 

 Bill No. 5.
 

 This hill was reserved to the overruling of a motion for a new trial. It merely reiterates the objections urged in the four-bills we have considered, together with the allegation that the verdict is contrary to the law and the evidence. The trial judge says: “The evidence abundantly shows that defendant was. guilty.” We have found that there was no error of law, and the jury is the sole judge of the evidence.
 

 Bill No. 6.
 

 This bill was reserved to the overruling of a motion in arrest of judgment. The motion is based upon the fact that the accused is charged with attempting to defraud a
 
 corporation
 
 and not a
 
 person.
 
 The accused was prosecuted under the provisions of Act 43 of 1912, which is as follows:
 

 “That every person who shall obtain or attempt to obtain from any other person, or persons any money or property, by means or by use of any false or bogus checks, or by any other means, instrument or device, commonly called the confidence game, shall be imprisoned with or without hard labor for not less than three months nor more than five years.”
 

 Section 1066 of the Revised Statutes disposes of this bill. The pertinent part of that statute is as follows.:
 

 “And whenever in this act in describing or referring to any person or party, matter or thing, any word importing the singular number or masculine gender is used, the same shall be understood to include, and shall be applied to several persons and parties, as well as one person or party, and females as well as males, and bodies
 
 corporate
 
 as well as individuals,” etc. (Underscoring by the court.)
 

 In the state’s brief it is said that the particular question raised by this bill is res novo. The reason why it has not heretofore been presented to this court is, doubtless, attributable to the fact that counsel for the accused did not overlook the statute from which we have quoted supra.
 

 The assignment of error filed in this court alleges that the minutes of court, which appear in the record, do not affirmatively show that the grand- jurors who returned the indictment under which the accused was prosecuted were sworn or that the grand jury was impaneled according to law. In the absence of a showing to the contrary, the law presumes that the officers performed their duty. Moreover,. an objection to the organization of the grand jury which found the bill of indictment cannot be made for the first time in the appellate court. State v.
 
 *162
 
 Price, 37 La. Ann. 215; State v. Fuller, 164 La. 718, 114 So. 606; State v. McCullough & Pearson (No. 29704) (La. Sup.) 121 So. 609,
 
 [1]
 
 this day decided.
 

 For the foregoing reasons, the verdict and sentence are affirmed.
 

 [1]
 

 Post, p. 161.