139 So. 648

**BANK OF WHITE CASTLE v. BAKER.**

No. 31135.

July 17, 1931.

On Rehearing, Feb. 1, 1932.

Charles T. Wortham, of Donaldsonville, for appellant.

Borron, Hebert & Owen, of Baton Rouge, for appellee.

**BRUNOT, J.**

This is a suit via ordinaria upon two mortgage notes aggregating the principal sum of $3,500, with 8 per cent. per annum interest thereon from May 28, 1922, and 5 per cent. of said notes and interest as attorney's fees, coupled with an attachment of the mortgaged property, and a demand for $1,171.10, with interest thereon at the rate of 5 per cent. per annum from June 10, 1926; and for the further sum of $539.02. There is also a demand for the correction of a clerical error in the description of the mortgaged property, for the maintenance of the attachment, and for the sale of the property to satisfy the mortgage indebtedness. The item of $1,171.10 represents the sum the plaintiff alleges it had to pay to redeem the mortgaged property which had been adjudicated to the Bank of New Roads at a delinquent tax sale thereof for the nonpayment of the taxes due thereon for the years 1921, 1922, and 1923. The item of $539.02 represents the sum of the taxes assessed against the mortgaged property for the

years 1924 and 1925, which the plaintiff alleges it paid.

The answer is, in effect, a plea of payment. It alleges an executed agreement under the terms of which all claims of the plaintiff against the defendant were liquidated.

The trial of the case resulted in a judgment in favor of the plaintiff for the sum of the mortgage notes, with interest thereon and attorney's fees, as prayed for, and for the further sum of $1,130.78, the actual amount the court found the plaintiff had paid to the Bank of New Roads to redeem the mortgaged property, together with interest thereon at the rate of 5 per cent. per annum from July 7, 1926, and all costs of the suit.

There was further judgment correcting the error in the description of the mortgaged property, and ordering it sold to pay the mortgage indebtedness.

The defendant applied for a new trial, or, in the alternative, for a rehearing. The court declined to grant either and the defendant appealed.

The plaintiff has answered the appeal and prays that the judgment be amended by increasing the amount awarded therein to $5,-263.60, and, as thus amended, that it be affirmed.

█ It is the settled rule that the burden of proof is upon him who pleads payment or the liquidation of a debt, to establish the plea by a fair preponderance of the evidence. The agreement upon which defendant relies is in the form of a letter dated April 12, 1923, addressed to Messrs. Monroe & Lemann, attorneys for Bowie Lumber Company, Limited, New Orleans, La., and signed by Thos. J. Clay, president of the plaintiff bank. The trial judge found that the mortgage notes sued upon were not included in the amounts due the plaintiff which were to be liquidated under the terms of said letter. He found that this view was sustained by a preponderance of the evidence; that the writer of the letter had no authority to include the mortgage notes in the agreement; but if the agreement can be so construed, his act was not ratified by the plaintiff's board of directors. We have read the record carefully and concur in the judge's finding of facts.

█ The trial judge, in his well-reasoned opinion, sustains the validity of the tax sale of the mortgaged property. The invalidity of that sale was not pleaded. In the absence of some pleaded irregularity or defect, there is nothing to adjudge.

█ The trial judge correctly held that the defendant's plea of prescription of three years against all tax mortgages and tax privileges claimed by the plaintiff did not apply to the taxes themselves, but only to the mortgages and privileges securing them. See Rousset v. City of New Orleans, 110 La. 1040, 35 So. 281; Miramon v. City, 52 La. Ann. 1623, 28 So. 107; Homestead Ass'n v. Garland, 107 La. 476, 31 So. 892; Leeds & Co. v. Hardy, Treasurer, 43 La. Ann. 810, 9 So. 488.

██ We think the trial judge properly held that at the expiration of the redemption period, at which time the Bank of New Roads became the absolute owner of the property, the tax mortgages and tax privileges to which it was subrogated were extinguished by con-

fusion. We also think that the judge correctly held that, after the expiration of the redemption period, the board of directors of the bank could waive its right to refuse to permit the plaintiff to redeem the property.

With respect to the claim of $539.02, the taxes on the mortgaged property for the years 1924 and 1925, which the plaintiff alleges it paid to the Bank of New Roads, we find, as did the trial judge, that this item is not sufficiently proved, and, as to it, the entry of a judgment of nonsuit was correct.

The prayer of the plaintiff's petition is for a judgment "in rem." The judgment of the district court maintains the writ of attachment and properly limits the execution of the judgment to the property attached.

For the reasons stated, the judgment appealed from is affirmed, at appellant's cost.

On Rehearing.

ROGERS, J.

This case having been re-examined and re-considered, and the conclusion of the court being that our former judgment was correct and should remain unchanged,

It is therefore ordered that our former decree be now reinstated and made the final judgment of the court.

OVERTON and ST. PAUL, JJ., dissent and hand down reasons.

OVERTON and ST. PAUL, JJ. (dissenting).

This appeal has heretofore been before us. It is therefore not necessary to restate the issues here, otherwise than in a general way.

The suit is brought via ordinaria on two mortgage notes aggregating the sum of $3,500.

The defense is payment, evidenced by a certain letter dated New Orleans, April 12, 1923, addressed to Monroe & Lemann, attorneys for the Bowie Lumber Company, Limited, and signed by Bank of White Castle, Thos. J. Clay, president; and upon the proper interpretation of this instrument depends the result.

I.

The record discloses that plaintiff bank had advanced to the Baker-Wakefield Cypress Company some $80,000 on invoices with bills of lading attached; which invoices with bills of lading proved (allegedly) to be worthless; and to secure the advances on them, the said Baker-Wakefield Company had executed a mortgage on certain timber lands in the state of Texas in favor of said bank.

This mortgage, however, was subordinate to a prior first mortgage in favor of Bowie Lumber Company in the sum of $75,000, which, in turn, was primed by unpaid vendor's lien and mortgage notes representing the obligation of Baker-Wakefield Company as part of the purchase price of these timber lands.

In order to protect their first mortgage, the Bowie Lumber Company, from time to time, paid these underlying mortgages amounting in principal and interest to $106,769.72.

Baker also then owed individually other amounts to plaintiff bank, secured by mortgage on lands in Louisiana, and it is upon part of this indebtedness this suit is brought.

II.

By an understanding between the Bowie Lumber Company and the Bank of White Castle, the bank foreclosed upon their mort-

gage and bought in the Texas property, at sheriff's sale. After holding it for some time, they (Bank of White Castle) located a purchaser for the timber thereon. Anticipating a large profit on this sale, they endeavored to clear title to the timber and entered into an agreement in the form of a letter (as aforesaid), which we here set out as follows:

(Letter of Bank of White Castle, by Thos. J. Clay, Pres., to Monroe & Lemann, Attorneys for Bowie Lumber Company, Ltd.)

"Gentlemen:

"We desire to acquire, directly or through our nominee, the claims which your client, the Bowie Lumber Company, Ltd., holds against H. L. Baker and/or the Baker-Wakefield Cypress Company, Ltd., secured by mortgage upon timber in Texas, and also the underlying mortgages and/or vendor's liens upon such timber which your client now holds. We desire, through our nominee, to purchase the claims of the Bowie Lumber Company, Ltd. rather than to pay them, in order to save the expense of executing new mortgages.

"We desire you to accept at this time on account of your attorneys' fees the sum of Twenty-Five Hundred Dollars ($2,500.00) in cash. In consideration of your client selling our nominee its claims as aforesaid, and in consideration of your agreeing to accept $2,-500.00 at this time on account of attorneys' fees, we hereby agree as follows:

"After all amounts paid by our nominee for acquiring the claims of your client, including the $2,500.00 paid you, shall have been reimbursed in principal, interest and costs, and after we shall have been paid all amounts due us by H. L. Baker and/or the Baker-Wakefield Cypress Company, Ltd., in principal, interest and costs, we will, out of any surplus proceeds of the timber now securing the claims which our nominee acquires from your client, pay the following:

"(1) The claims of Claud Stubbs and G. W. Edmondson, being One Thousand and Ninety-Nine Dollars and 29/100 ($1,099.29) to Stubbs and One Thousand Three Hundred Dollars ($1,300.00) to Edmondson.

"(2) The sum of Seven Thousand Five Hundred Dollars ($7,500.00) to such person or persons as you direct, such amount being the balance which you would be entitled to claim on attorneys' fees.

"The timber referred to is now held in fee by the undersigned, subject to the mortgages above referred to.

"In figuring the amounts due us by H. L. Baker and/or the Baker-Wakefield Cypress Company, Ltd., no account shall be taken of any credits which may have been allowed or figured upon such indebtedness as a result of the purchase made by the undersigned at the foreclosure sale.

"We have a contract to sell this timber to the Kirby Lumber Company, who are to make payment partly in cash and partly in notes. We expect to discount their notes and such discount will be considered the completion of the transaction for the sale of the timber upon which the proceeds and the profits, if any, from the sale thereof (after covering the amounts of the mortgages and all amounts due us by Baker and/or the Baker-Wakefield Cypress Company, Ltd.) shall be calculated."

### III.

When this letter was drawn up in Mr. Lemann's office, Mr. Lemann representing Bowie

Lumber Company, and · Messrs. Clay, president, and W. W. Young, attorney, representing Bank of White Castle, all took part in drafting it or making suggestions. Therefore it must be considered a true reflection of their intentions at the time. While Mr. Young and Mr. Clay positively state that it was not their intention to include in the agreement the discharge of *all* of the indebtedness due the bank by Baker individually, as well as by the Baker-Wakefield Company, yet Mr. Lemann is equally positive to the contrary.

We certainly do not intend nor wish it inferred that we favor the testimony of either Mr. Lemann or Mr. Young; both are practicing lawyers of this Bar and both stand high in the regard and esteem of the legal profession. Their veracity is unquestionable. Nor have we any reason to believe Mr. Clay testified otherwise than as he believed the truth to be. But Mr. Lemann had occasion to perpetuate the understanding at that time by a letter dated April 14, 1923, addressed to C. F. Borah, Esq., then attorney for Baker; being two days after the agreement was dictated and one day after it was signed; and therefore at a time when the circumstances were still fresh in his mind.

### IV.

But apart from the testimony (the admissibility of which is at best questionable), we find, from reading the document itself, that the words "and after we shall have been paid *all* amounts due us (Bank of White Castle) by H. L. Baker and/or the Baker-Wakefield Cypress Co. Ltd.," can mean only just what it says. *All* amounts excepts none.

### V.

The Bowie Lumber Company held the controlling hand. It could have foreclosed on its mortgage and left the bank alone to take care of its own interest; which would then have been wiped out entirely. Instead of which, however, it took the kindly attitude of trying to assist the bank to get its money and at the same time secure to Baker what profits remained after all indebtedness had been paid; or at least sufficient thereof to free him from debt.

Bowie Lumber Company's attitude toward Baker had always been favorable and friendly, and its idea seemed to be to help the bank to get its money whilst preventing it from enriching itself at Baker's expense. Therefore, when the bank negotiated with Bowie Lumber Company for the purchase of the notes the latter dictated conditions favorable to Baker; the result of which would be the payment of all Baker owed the bank if there was sufficient profit on the sale of the timber to do this. And the fact is that there was.

### VI.

It is urged that even if Clay made such an agreement, he was unauthorized to do so. But this contention is unfounded. It will be remembered that the bank did not offer to *pay* the note, but to *buy* it; and whilst Bowie Lumber Company would have been obliged to accept *payment* unconditionally, yet it was privileged to *sell* on what terms it pleased. Now the bank knew, or should have known, since its president knew, the conditions on which the sale was made. It was its privilege to approve or repudiate such sale (if its president was unauthorized). But it must approve

or repudiate such sale *as made;* that is to say, it was bound to accept or reject the sale *as a whole* and could not change the terms thereof without the consent of the other party. This is so elementary that it requires no further attention. But the bank chose to take the benefit of the contract; it must therefore bear the burden thereof. And one of these burdens was the obligation to discharge *all* of Baker's indebtedness, if the profits of the timber sale sufficed for that; which they did.

### VII.

The matter of taxes is not complained of by either party, and needs no further mention. As to this the judgment will be affirmed; in all the other respects it will be reversed.

We think the judgment herein should be as follows:

For the reasons assigned the judgment appealed from is affirmed in so far as it allows plaintiff "the sum of $1,130.78 with interest thereon at the legal rate of five per cent. per annum from the 7th day of July, 1926, until paid, and all costs of this suit"; and in all other respects said judgment is reversed and plaintiff's demands rejected. Costs of this appeal to be paid by plaintiff.