## STATE ex rel. McGREGOR et al. v. DIAMOND, Marshal, et al.

### No. 5269.

Court of Appeal of Louisiana. Second Circuit.

April 30, 1936.

762

Thos. H. McGregor, of Alexandria, for appellants.

W. A. Cooper, of Rayville, for appellees.

DREW, Judge.

This is the second time this case has been before us, first on an exception of no cause of action, which was sustained below. We reversed the lower court and remanded the case for trial on its merits. McGregor v. Diamond, 164 So. 436, 440. After trial on the merits, the lower court rejected plaintiffs' demands and they have prosecuted this appeal.

When .the case was formerly before us, in our opinion we quoted the petition in full and, for the sake of brevity, we will now only refer to those parts of the pleadings which are pertinent to the question presented for determination.

Plaintiffs were the record owners of certain properties situated in the town of Rayville, Richland parish, La. The properties were adjudicated to the state for the unpaid state and parish taxes for the year 1931, and in January, 1933, the town marshal and ex officio tax collector for the town of Rayville advertised the same properties for sale to pay the unpaid taxes due the town for the year 1931. When the property was offered for sale, there were no bidders and plaintiffs allege that it was struck off or adjudicated to the town of Rayville, as provided by Act No. 170 of 1898, as amended. They further allege that it is admitted that the marshal did not execute a deed to the town and did not file for recordation, in the office of the clerk of court and ex officio recorder for the parish of Richland, a deed or list of the property alleged to have been adjudicated. In 1935, the town marshal again advertised the same property for sale to pay the unpaid taxes due the town for the years 1932 and 1933, and, after offering same for sale and there being no bidders, the property was adjudicated to the town of Rayville and a deed executed, filed, and recorded in the office of the clerk of court and ex officio recorder.

Plaintiffs applied to the register of land office for the state and, upon agreeing to pay the amount of actual taxes due for the year 1931 in five equal installments, were granted a redemption deed, duly executed by the register, in accordance with Act No. 161 of 1934. Plaintiffs then offered to pay to the town of Rayville the amount of taxes due for the year 1931, and requested that the town marshal record a deed, in accordance with the alleged adjudication in January, 1933, and that after this was done, the town execute to them a redemption certificate, as provided by Act No. 161 of 1934. This the town,

through its proper authority, refused to do. Plaintiffs then filed this suit praying that a mandamus issue ordering and commanding the town marshal to file for recordation in the office of the recorder of conveyances a deed, in accordance with the alleged January, 1933, adjudication of plaintiff's property to the town for the unpaid taxes of 1931, and that the mayor of said town be ordered and commanded to issue to them, upon their paying to the town the taxes due for the year 1931, a certificate of redemption, as provided by Act No. 161 of 1934; and, further, that the clerk of court and ex officio recorder be ordered and commanded to cancel and erase from the records of his office the deed to the town of Rayville executed by the town marshal at the tax sale in 1935, and for the unpaid taxes for 1932 and 1933, which deed or deeds, they allege, are nullities and of no effect.

All three defendants joined in one answer. They admitted the property in question had been adjudicated to the state for the taxes of 1931, and that a redemption certificate had been issued to plaintiffs by the register of land office; they admitted the taxes due the town of Rayville for the year 1931 were not paid and that the property upon which said tax lien rested, was advertised, according to law, and offered for sale and that there were no bidders on same; they denied that the property was adjudicated to the town; they admitted that the marshal did not execute and record a formal title, deed, statement, or procès verbal showing an adjudication, for the alleged reason that he did not adjudicate the said property to the town; they admitted the request for and refusal to execute a redemption certificate to plaintiffs; and they admitted the adjudication at an alleged tax sale of the property to the town in 1935, for the unpaid taxes of 1932 and 1933.

Defendants further averred that Act No. 175 of 1934 had not been complied with by plaintiffs and that said act requires that they pay all taxes, state, parochial, district, and municipal, due on said property up to the date of redemption, and until same is done, plaintiffs have no right to demand a redemption deed. They further alleged the redemption from the state by plaintiffs is null and void and of no effect; and, further, that the town of Rayville, through its proper officers, has not declared an emergency to exist, as re-

quired by Act No. 6 of the Third Extra Session of 1934, and has not passed any ordinance or resolution reducing or abrogating any tax penalties or interest, as required by said act, and has not provided, by ordinance or otherwise, for the redemption of property adjudicated for taxes, in accordance with Act No. 161 of 1934.

Defendants further answered as follows:

"34. That all of the taxes due by plaintiffs on the property described in paragraph 1 of their petition have been specially set aside and dedicated to the payment of outstanding bonds and obligations of the said Town of Rayville, Louisiana, and that if defendants are deprived of the right to collect delinquent taxes for the years 1932, 1933, 1934 and 1935, under Act 161 of 1934, the holders of the said bonds and other obligations of the Town of Rayville, Louisiana, which have been secured by taxes due from this property and dedicated for that purpose, that the said Act 161 of 1934 is unconstitutional and violative of the provisions of Section 15 of Article 4 of the Constitution of the State of Louisiana, for the year 1921, in that it will divest vested rights in the holders of said obligation, and, therefore, unnecessarily punish and penalize all other property tax payers in the Town of Rayville, Louisiana.

"35. Your defendants further aver: that Act 161 of 1934 is null and void in so far as the Municipality of the Town of Rayville is concerned, for the reason that it violates Section 13 of Article 4 of the Constitution of the State of Louisiana for the year 1921, which prohibits the Legislature from releasing or extinguishing in whole or in part any indebtedness, liability or obligation of any corporation or individual to the State of Louisiana or to any Parish or Municipal corporation thereof.

"36. Your defendants further aver: that the said Act is in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States, in that it takes from your defendants its property rights without due process of law, and that it abrogates the obligation of its contract entered into prior to the enactment of said statute.

"37. Your defendants herein further answering, show that the Town of Rayville had no lien or privilege on the property described in plaintiffs' petition for taxes

due for 1931, and, if they did have, it has long since been prescribed against, for the reason that the Assessment Roll for the year 1931 was not filed with the Recorder of Mortgages for Richland Parish, Louisiana, and that therefore there was no adjudication to the Town for taxes for the year 1931, and no steps have been taken to perfect such adjudication, if there had been one. Any claim of the Town of Rayville for the taxes for that year has long since prescribed.

"38. Your defendants further aver: that of the taxes due by the plaintiffs herein on the property described in plaintiffs' petition, there are outstanding bond issues of lights, water, old sewerage bonds and new sewerage bonds and new improvement bonds, and of which taxes the bulk of the same is pledged to pay said bonds, all of which will be more fully shown on the trial hereof, and that said amounts have been dedicated and set aside and pledged to secure the payment of said bonds and that therefore the effort of the plaintiffs herein to be relieved of the taxes for the years 1932, 1933, 1934 and 1935, would be divesting vested rights of the bond holder, and that any legislation which attempts to accomplish such a purpose is violative of Article 4 of Section 13 of the Constitution of the State of Louisiana, and is prohibited by said Article and Section of the said Constitution."

The lower court rendered a written opinion in the case, which is as follows:

"This case was dismissed on an exception of no cause of action by this court, appealed to the Court of Appeal and sent back for trial on its merits. The Court of Appeal said in its opinion, 'whether or not the property was adjudicated to the Town is a matter to be determined upon the merits of the case.' We think, therefore, that this is one of the main issues before the court.

"All parties admit that the property was advertised at Town of Rayville tax sale to take place on January 7, 1933, for the unpaid taxes of 1931. It is further a fact that this sale was duly held, and the property offered, but that there were no bidders for the same. Plaintiffs contend that the adjudication takes place automatically as soon as there is an offering and there are no bids for the property. We cannot follow this reasoning, and do not think the Court of Appeal holds that view, inasmuch as the case was remanded to determine, on the merits, whether there was an adjudication to the Town. We take the view that the adjudication is the foundation for acquiring title at any judicial sale and to this effect submit the following cases: [King v. New Orleans Terminal Co.] 3 Orleans App. 490; [Smith v. Krause & Managan Lumber Co.] 125 La. 703 [51 So. 693], and [McCall v. Irion] 41 La.Ann. 1126 [6 So. 845], together with cases there cited.

"Upon this question of fact as to whether or not there was an actual adjudication to the Town, we find that there was not. Mr. R. S. Diamond, the Marshal, testifies that at this particular sale there were a large number of pieces of property advertised; that he offered them in alphabetical order and that the Willis property was near the bottom of the list and, consequently, was one of the last pieces offered. From all of his testimony, we conclude that after offering the first few pieces, he did make the necessary adjudication to the Town, but for some reason discontinued doing this and did not do so in most cases, including the Willis property. This may have happened from carelessness, or may have occurred because, prior to this sale, the Town had customarily refused to take title to any property, but simply waited until the next tax sale, hoping that the delinquencies would be made good, which usually had been done up to this time.

"Plaintiffs invoke the doctrine that a public officer is presumed to perform his duties legally, and argue that the Marshal is presumed to have adjudicated the property to the Town when he received no bids. We recognize this rule of law, but do not see how it helps plaintiffs in this case. We do think that if a deed had been executed and recorded, the presumption would be very strong that the adjudication was properly made. It was the Marshal's duty to make and record a deed within ten days. This was not done. Therefore, by applying this doctrine of presumption we could hold that the Marshal is presumed not to have made the necessary adjudication or else he would have fulfilled his duty by making and recording a deed.

"Plaintiffs offered A. J. and J. W. Willis, two brothers of plaintiffs, to prove the actual adjudication. A. J. Willis corroborates R. S. Diamond, Marshal, in saying that when the sale was begun, the necessary adjudication was made, but he says that he left as soon as he saw there were no bidders for the Willis property, and was

not able to say whether it was actually adjudicated. J. W. Willis corroborates the Marshal by saying that an adjudication was not made in all cases, but he does say it was made for the Willis property. This court was not impressed by the testimony of J. W. Willis.

"Our conclusions are that an actual adjudication was necessary to complete the tax sale and, inasmuch as there was none, plaintiffs' suit must be dismissed, at their cost, and it is so ordered."

 It is to be noted that the court did not directly pass upon the question of the unconstitutionality of the act, which was raised by defendants. The silence of the opinion in this respect can be taken by us as overruling defendants' contention. Defendants have answered the appeal and urge the question here. In our former opinion (164 So. 436), when the case was before us on an exception of no cause of action, in the course of the opinion we said:

"The petition alleged that the property was legally adjudicated to the town of Rayville for the taxes of 1931, and claimed the right to redeem it under Act No. 161 of 1934. It likewise alleged that the same property was adjudicated to the state for the taxes of 1931, and the registrar of land office had furnished them with a certificate of redemption in accordance with Act No. 161 of 1934. This being true, it shows the interpretation placed upon this act by the state authorities.

"It is urged by defendants that a mandamus proceeding is not the proper remedy. It seems clear that it is the mandatory duty of the town marshal to advertise and offer for sale property upon which the town taxes have not been paid, and if there are no bidders who offer to pay the taxes, interest, and costs, that he shall then adjudicate it to the town. This is alleged to have been done for the 1931 taxes. It is then a mandatory duty for the marshal to see that the proper certificate, deed, or proces verbal is executed and placed of record. His duties in this respect are purely ministerial and, to force him to perform them, a mandamus will lie. Whether or not the property was adjudicated to the town is a matter to be determined upon the merits of the case. For the purpose of the exception, the allegations of the petition are taken as true, and a careful study of the petition discloses that plaintiffs have set forth a cause of action. There are numerous other questions discussed in defendants' brief which are not matters to be passed upon on the exception of no cause of action."

On trial of the case on the merits, the following testimony was offered: The marshal of the town, who is ex officio tax collector, was sworn and examined at great length by counsel for both sides, and a complete résumé of his testimony amounts to nothing more than that he does not remember whether, after offering the property for sale and there being no bidders, he used the words denoting that he struck said property off or adjudicated it to the town. On direct examination he testified as follows:

"Q. Mr. Diamond, state just the procedure that you followed at that tax sale that day, with reference to the sale of the property? A. I read the announcements in the Parish newspaper notifying the property owners that there would be a tax sale that day, I read the authority given me by the State of Louisiana, in making such sales, and I proceeded with the first piece of property in alphabetical form and I would offer said piece of property for sale, if there was a bid by any one, I would announce the sale to so and so, for the amount of taxes due against said property, if there was not a bid, I would announce after waiting a reasonable length of time for a bid, that I hear no bid, I deed this to the Town, probably followed that course for a while, I wouldn't say for how many pieces of property, but just like anything that you repeat over and over, you probably will come to just a mumble or grunt after saying the same thing over and over a certain length of time, and as well as I can remember, I would eventually leave it off and not say anything, knowing that up to that time, there hadn't been any dispositions made of the property after the sale."

And later in his testimony, he testified as follows:

"Q. Now, then, do you remember making the statement after there were no bidders on all pieces of property that were offered for sale, after that argument saying that you adjudicate or strike off any of that property to the town? A. I don't remember any difference in the sale from there out— in anything I might have said up to that time.

"Q. To the best of your memory, when this property was offered for sale—this Willis property was offered for sale—did you say that you 'strike off or adjudicate the property to the town?' A. I don't remember.

"Q. You don't remember? A. No, sir.

"Q. In other words—you say positively that you did or did not? A. No, sir, I couldn't.

"Q. To the best of your memory, could you say you did or did not to the best of your memory? A. Well, I don't believe I could, I don't believe I could say either way, unless if I did the presence of the interested parties could have caused me to say something that I didn't say in the other pieces, where the property owners were absent, but I don't remember saying that I adjudicated it to the Town or don't remember not saying it."

■■ There is no testimony by any one to the effect that the tax collector did not strike off or adjudicate the property in question to the town. There is the testimony of one witness who was present at the sale, who was a brother of plaintiffs and present to see what disposition was to be made of the property, and he is positive that the property was actually struck off and adjudicated to the town by the tax collector, after no bids were made. For reasons not made plain by the lower court, this testimony was not considered; however, without giving any consideration to this last-stated testimony, we are of the opinion that the question of whether or not an adjudication was made is clearly with the plaintiffs, and there is a legal presumption that the adjudication was made, which presumption is sufficient to justify a decision thereon, unless it is clearly shown there was no adjudication, for the reason that every officer is presumed to have performed the duties required by him by law until it be clearly shown by evidence that he has failed to do so, and it was the mandatory duty of the tax collector to strike off and adjudicate the property to the town after no one bid for said property. State v. McCall, 162 La. 471, 110 So. 723; Lemann v. Ascension Parish School Board, 158 La. 81, 103 So. 517; State v. Solomon, 168 La. 153, 121 So. 607.

We therefore find the property owned by the plaintiffs in the town of Rayville, La., was adjudicated to the town of Rayville in January, 1933, for the taxes due for the year 1931, and it was and is the mandatory duty of the marshal and ex officio tax collector of the town to file for recordation, in the office of the clerk and ex officio recorder, a deed or list of the property showing the disposition of same, unless there is some legal reason shown for his not doing so. Meyer v. Fountain, 34 La.Ann. 987.

■■ Defendants urge that it is incumbent upon plaintiffs to show that the tax sale was regular in every respect; that is, that the property was properly described in the advertisement, that it was properly advertised, and that the proper legal notice was given, etc. It is admitted that the property was legally advertised and offered for sale, and if there were any irregularities in the sale and the adjudication of the property, due to want of notice, etc., it would have to be shown by defendant town as a matter of defense, if it is not estopped from pleading the negligence of its own officer as a defense, for the reason that all tax sales are presumed to be regular and legal, until the contrary is shown by proper legal testimony. State v. Judge of Fourth District Court, 27 La.Ann. 704; Norcross v. Betz, 32 La.Ann. 1303; Norcross v. Burke, 32 La. Ann. 1303.

■ Defendants further urge that plaintiffs are without interest in demanding that the evidence of the adjudication of their property to the town for the taxes of 1931 be placed of record, for the reason that if their contention is correct, they can redeem the property for the taxes of 1932, and that the town is estopped from claiming the taxes for 1931 by its act in assessing the property to plaintiffs' for 1932 and 1933, and adjudicating it to the town for the taxes due for the two latter named years; and for the further reason that more than three years have elapsed since the taxes for 1931 were due and payable, and said taxes have prescribed. The theory of estoppel urged by defendant town is not sound.

General Statutes (Dart's) § 8495, provides:

"Sale for tax of one year does not invalidate taxes due for other years.—No sale of property due for taxes of the year immediately past due shall in any manner effect, invalidate or extinguish the claim of the state, or any municipality or parish for the taxes due on said property for any previous year or years either before or since the adoption of the constitution. (Acts 1898, No. 170, § 92.)" Miller v. Loisel Sugar Co., 170 La. 115 127 So. 383.

■ Furthermore, and in any event, for the adjudication to be waived by the town, it must be shown that plaintiffs were in undisturbed corporeal possession, and the action of the town authorities was such as to lure plaintiffs into inaction. There is no evidence on this line. Baldwin Lumber Co. v. Dalferes, 138 La. 507, 70 So. 493.

Furthermore, we doubt seriously if defendant town can plead estoppel against itself, and plaintiffs are not urging it. To hold that the town had waived title to the property by assessment and adjudication for the years 1932 and 1933, we would have to ignore Act No. 170 of 1898, § 61, as amended by Act No. 315 of 1910, § 5, Dart's General Statutes, § 8465.

■ The prescription urged here is without merit. It has been repeatedly held that city taxes are imprescribable, but the privileges securing them are prescribed by three years. Peoples' Homestead Ass'n v. Garland, 107 La. 476, 31 So. 892; Bank of White Castle v. Baker, 174 La. 17, 18, 139 So. 648; Miramon v. City of New Orleans, 52 La.Ann. 1623, 28 So. 107; Leeds & 'Co. v. Hardy, Treasurer, 43 La.Ann. 810, 9 So. 488; Succession of Stewart, 41 La.Ann. 127, 6 So. 587.

■ It therefore follows that although the property assessed bears no lien for the 1931 taxes, plaintiffs are personally liable for them, if we should find that the property was not adjudicated to the town of Rayville for the 1931 taxes. This being true, plaintiffs have an interest in having a proper list showing the adjudication filed for record; otherwise, they would or could be forced by the town to pay the taxes for 1931 and 1932, if they redeemed under the 1932 adjudication. They furthermore have an interest in having the adjudication placed of record in order that they may take advantage of an act of the Legislature which is beneficial and advantageous to them.

■ Defendants further contend that Act No. 175 of 1934 governs in this case and that plaintiffs have not complied with it. There is no merit in this contention. The Supreme Court, in the case of State v. Grace, 182 La. 405, 162 So. 26, held that Act No. 175 of 1934 was superseded during the period fixed in Act No. 161 of 1934, except as otherwise provided therein.

This brings us to the question of the unconstitutionality of Act No. 161 of 1934, in so far as it applies to municipalities, such as cities and towns. The mayor of the town of Rayville testified that there had not been any ordinance passed declaring an emergency to exist in the town. He further testified as follows:

"Q. Mr. Jones, were the taxes for the year 1931 set aside and dedicated to the payment of outstanding bonds and obligations of the Town of Rayville? * * *

"Q. Were the taxes for the years 1932, 1933, 34 and 35, set aside and dedicated to the payment of certain bonds and obligations of the Town of Rayville?

"Objection: Objected to 'for the reason under the law, after property has once been adjudicated to the State of Louisiana or to any of its subdivisions of municipalities, no further taxes can be collected from . that property, and therefore there can be no dedications of those taxes to the payment of any preexisting and formerly issued bonds.

"Ruling: Objection overruled.

"Q. Answer to both those questions? A. There is a given number of mills dedicated to retire those bonds each year.

"Q. That covers? A. 1931, 32, 33, 34 and 35.

"Q. Mr. Jones, in the event the Town loses the taxes for the years 1932, 33, 34 and 35, will it be necessary to increase the millage on other property owners in the Town of Rayville?

"Objection: Objected to for the reasons heretofore urged, being that after this property was adjudicated to the Town of Rayville for the year 1931, no further taxes could be assessed upon, collected from the said property under the law existing at that time, unless and until the said property should be redeemed from the tax 'sale held on January 7, 1935, that since this adjudication as alleged by plaintiffs, there has been passed an act, Act 161 of 1934, which specifically provides that no taxes subsequent to the' year for which the adjudication was made shall be collectible upon or from the said property, except for the year beginning after the date of the redemption.

"By the Court: Objection overruled.

"A. That is true.

"Q. Now, that would be—this millage would have to be increased to meet the payment of these outstanding bonds and obligations? A. Yes, sir. * * *

"Q. Getting back to the bonds and obligations, will you name some of the outstanding bond issues of the Town of Rayville? * * * A. We have five bond issues, we have light, then we have sewerage, we have improvement issues,—that is four—we have two others, one is old light or water, I don't—

"Q. Old sewerage and old water? A. Anyway, there is five of them, five issues.

"Q. Those bonds are outstanding at this issue and have been since January, 1933, and before? A. Oh, yes."

The articles of the Constitution, defendants allege, which are violated by Act No. 161 of 1934, are:

Article 10, § 1, Constitution of 1921:

"Taxing power vested in Legislature— Assessment of property—Income tax—Forest severance tax.—The power of taxation shall be vested in the Legislature; shall never be surrendered, suspended or contracted away; and all taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only" —in that said act abolishes the uniformity of taxes on the same class of subjects, and is not for public purposes.

Article 14, § 14(b), Constitution of 1921:

"Parish bonds — Issuance — Purposes Limited.—Except as otherwise herein expressly provided, no bonds shall be issued by any parish for any purpose other than for constructing and maintaining public roads, highways and bridges, constructing courthouses, jails, hospitals and other public buildings, and other works of public improvement, together with the necessary equipment and furnishings therefor, title to which shall be in the public, and for such other public purposes as the Legislature may authorize; nor by any municipal corporation for any purpose other than opening, constructing, paving and improving streets, roads and alleys, constructing bridges, purchasing or constructing waterworks, sewers, drains, lighting and power plants, artificial ice and refrigeration plants, public parks, school houses, teachers' homes, and other public buildings, and works of public improvement, together with all necessary equipment and furnishings therefor, title to which shall be in the public, and for such other public purposes as the Legislature may authorize; nor by any school district for any purpose other than acquiring lands for building sites and playgrounds, and for purchasing, erecting, enlarging or improving school buildings and teachers' homes, and acquiring the necessary equipment and furnishings therefor; provided, municipalities may, in the same manner as herein provided, when authorized by an act of the Legislature, incur debts and issue negotiable bonds for the purpose of reclaiming, preserving or improving lands owned by the municipality and fronting on a navigable stream, and may dedicate the revenues from or proceeds of sale of such lands to the payment of the principal and interest of the bonds so issued"

—in that, under said section, it has issued bonds and levied taxes for the payment of same, and to take away from the municipality the taxes for the years 1932, 1933, 1934, and 1935, which in substance is what the act does in this case, is violative of said section.

Article 10, § 5, Constitution of 1921:

"Parochial and municipal corporations and public boards—Taxing power.—Parochial and municipal corporations and public boards may exercise the power of taxation, subject to such limitations as may be elsewhere provided in this Constitution, under authority granted to them by the Legislature for parish, municipal and local purposes, strictly public in their nature. The provisions of this section shall not apply to, nor affect, similar grants to such political subdivisions under other sections of this Constitution which are self-operative"

—gives municipalities power to tax under the authority of the Legislature. Said power included the right for it to tax for the years 1931 through 1935, and there was an existing liability or obligation to the town of Rayville by plaintiffs on the date of the passage of said act, and the Legislature was powerless to extinguish it in whole or in part; that the taxes for 1932 and 1933, on the property involved, were an existing liability to the town and were in effect prior to the passage of the act.

Article 4, § 15, Constitution of 1921:

"Ex-post facto laws—Impairment of contracts—Vested rights protected.—No ex-post facto law, nor any law impairing the obligation of contracts, shall be passed; nor shall vested rights be divested, unless for purposes of public utility, and for just and adequate compensation previously paid"

And article 4, § 13, Constitution of 1921:

"Release of debts due State prohibited —Taxes on confiscated property—Exception.—The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishment, in whole or in part, of the indebtedness, liability or obligation of any corporation or individual to the State, or to any parish or

municipal corporation thereof; provided, the heirs to confiscated property may be released from all taxes due thereon at the date of its reversion to them"
—in that Act No. 161 of 1934 deprives the town of vested rights which it has in the property involved herein.

They further contend that said act is in violation of article 10, § 4, of the Constitution of 1921, in that it exempts private property from taxation; the property having been redeemed from the state by plaintiffs' in the year 1935, could not be exempt for taxes of that year, as provided by said act, and in that respect violates the said section.

Mr. Justice Fields, in the case of New Orleans v. Clark, 95 U.S. 644, 654, 24 L. Ed. 521, said:

"A city is only a political subdivision of the State, made for the convenient administration of the government. It is an instrumentality, with powers more or less enlarged, according to the requirements of the public, and which may be increased or repealed at the will of the legislature. In directing, therefore, a particular tax by such corporation, and the appropriation of the proceeds to some special municipal purpose, the legislature only exercises a power through its subordinate agent which it could exercise directly."

In the case of State ex rel. Porterie v. Walmsley, 183 La. 139, 162 So. 826, 836, the Supreme Court of this state said:

"Municipalities are established for public purposes alone, and by specific grant of charter rights by the Legislature are empowered to administer a part of the sovereign power of the state over such territory as the municipality may embrace. They are mere creatures of the Legislature and are entirely subject to the legislative will. Laws which establish and regulate municipal corporations are not contracts; they are ordinary acts of legislation, and the powers and authority which they confer are nothing more than mandates of the sovereign power, the state, and those laws may be repealed or altered at the will of the Legislature, except so far as the repeal may affect the rights of third persons acquired under them. Police Jury v. Shreveport, 5 La.Ann. 661, 665; Reynolds v. Baldwin, 1 La.Ann. 162; State ex rel. Hernandez v. Flanders, 24 La.Ann. 57, 61; New Orleans, M. & C. R. Co. v. New Orleans, 26 La.Ann. 478, 487; Diamond v. Cain, 21 La.Ann. 309."

And in the case of City of Gretna v. Bailey, 141 La. 625, 626, 75 So. 491, 493, Ann.Cas.1918E, 566, the court said:

"Of course a municipal corporation, being a creature of the Legislature, cannot question the authority of the creator of its charter to amend the same, except insofar as the Legislature attempts to exceed its own constitutional authority. But the General Assembly is as well bound not to violate the mandates expressed in the Constitution as a corporation created by the Legislature is controlled by its statutes."

This rule was held to be the prevailing rule by the Orleans Court of Appeal, speaking through Judge Westerfield, in the case of State ex rel. John W. Huggett et al. v. George Montgomery, State Tax Collector for City of New Orleans, 167 So. 147, not yet reported [in State report].

It is necessary that these views be kept in mind in determining the constitutional questions raised by the defendants.

It is common knowledge that hundreds of thousands of acres of land were adjudicated to the state for taxes during the period of the recent depression, due to the financial inability of the owners thereof to pay the taxes when due. Likewise, a great amount of urban property was adjudicated to the different municipalities, causing a great loss in revenue formerly received from taxation, and, with this in mind, it was evidently the purpose of the Legislature, in enacting Act No. 161 of 1934 and the amendment thereto (Act No. 30 of 1934, 2d Ex.Sess.), to provide a way for this property to be redeemed and again placed on the tax rolls, the result of which would be an increase in revenue to the state and the municipalities, in proportion to the amount of property redeemed, and we are sure the act has, to a great extent, served this purpose.

Defendants contend that Act No. 161 of 1934 violates article 4, § 15, of the Constitution of 1921, in that it violates the obligation of a contract made between the town and the holders of the bonds issued for public purposes and improvements, to be paid by the levy of a tax against all property in the town not specifically exempt from taxation at the time of the issuance of the bonds. Plaintiffs' property was not exempt from taxation at the time of the issuance of the bonds. When it was adjudicated to the town for the 1931 taxes, it then became exempt for the reason the town was without power to assess and tax its

own property. The right of the town to levy taxes and enforce their collection, even if necessary to adjudicate the property to itself, cannot be questioned with any degree of seriousness, for the right to levy taxes without the right to enforce payment would be a useless thing. This right has existed in the town since its creation by an act of the Legislature. Therefore, when plaintiffs' property became the property of the town, the right to levy taxes against it for the purpose of paying the outstanding bonds came to an end. There was no way for that property to again become liable for taxes to inure to the benefit of the bond holders, until it was sold by the town to some private concern or individual, or redeemed by the former owner. The town could have taken possession of the property and rented or sold it after the period of redemption had expired, but in either event, the only part of the sale price that can go to the payment of the bonds would be that part of the taxes due for the year for which the property was adjudicated. The remainder of the funds derived from the sale would go to the general fund of the town (Act No. 237 of 1924, § 7); and the funds derived from renting or leasing the property would all go to the general fund. Act No. 170 of 1898, § 5, and Act No. 315 of 1910, § 3. Bonds issued by a town are provided for by Act No. 277 of 1916. This act specifically provides the manner of payment of such bonds and from what funds it shall be derived. Under said act, the bonds cannot be paid from the general fund of the town. The method therein stated of procuring money with which to meet the principal and interest on said bonds, which is by levying a tax not to exceed 2½ mills, is exclusive. State of Louisiana ex rel. Carleton Shaw v. Police Jury of Parish of Catahoula (La.App.) 167 So. 754, this day decided.

There is no contention made by defendants that there was any impairment of the obligations of a contract in the town's having plaintiffs' property adjudicated to itself, or that it violated article 4, § 13, of the Constitution of 1921, by releasing or extinguishing any indebtedness of plaintiffs to the town. After title to the property passed to the town for the 1931 taxes, the property, or the former owners, were not obligated or indebted to the town for any taxes after the year 1931. After the period of redemption had expired, the town was the absolute owner of the property and, as said by the court in the case of State v. Grace, 182 La. 405, 162 So. 26, 28:

"No reasons are urged, or can be urged, why the state, being the owner of the property, could not sell the same and fix the price, and impose such conditions on the sale as she deemed fit and proper. There is no restriction that can be placed upon the conditions which she may impose upon the sale of her property."

Likewise, there is no reason that can be urged why the Legislature cannot impose upon the municipalities of the state the conditions under which they shall sell or dispose of the property they own. There is no inhibition in the Constitution preventing the Legislature from doing so. Police Jury v. Grace, 182 La. 64, 161 So. 22.

Act No. 161 of 1934 provides that the former owner of the property adjudicated to the town may redeem said property by payment of the actual amount of taxes due for the year the property was adjudicated. After the date of adjudication, there were no taxes due by the former owners for the years following, and to allow them to redeem without paying for the years following the adjudication, for which they were not indebted, is not in violation of the provisions of article 4, § 13, of the Constitution of 1921. There can be no debt without a debtor, and there can be no tax debtor during the time the property was in the town. State ex rel. Huggett v. Montgomery, Tax Collector, supra.

Defendants urge that the act is in violation of article 10, § 1, article 14, § 14, and article 10, § 5, of the Constitution of 1921. We fail to find any application of these sections of the Constitution to the question before us, other than inferentially, and what we have said in our discussion of the other articles set out by defendants as being violated by the act under consideration, is applicable to any inferential connection between the sections and the question presented.

[23] Defendants finally contend that the act violates article 10, § 4, of the Constitution of 1921, in that it exempts private property from taxation. The property having been redeemed in the year 1935, could not be exempt for the taxes of that year, as provided by said act.

The 1935 taxes are not in contest in this suit, and we are not called upon to pass on the section of the act dealing with the taxes for the year in which the property was redeemed, until the question is brought before us. A decision on this part of the act, if favorable to defendants, would not de-

stroy that part of the act applicable to the issues here.

We therefore conclude that the judgment of the lower court is erroneous, and it is now reversed, and there is judgment for plaintiffs and against defendants, making the rule issued herein absolute; ordering and commanding R. S. Diamond, marshal and tax collector of the town of Rayville, La., to execute and record in the office of the clerk and ex officio recorder for the parish of Richland, a formal title deed or list, made in accordance with the land, of the property formerly owned by plaintiffs and adjudicated to the town of Rayville in January, 1933, for the taxes of 1931, covering the following described property:

(a) Lots 2 and 3 of Scott's addition, assessed in the name of Berry Willis and Heirs of J. W. Willis;

(b) Fractional lots 5 and 6, block A, Newman's addition to the town of Rayville, and lot in block 10 of Ray's plan of Rayville, assessed in the name of Heirs of J. W. Willis;

(c) An undivided one-half interest in lots 1 and 8, block 3, of Scott's addition in the town of Rayville, assessed in the name of Heirs of J. W. Willis et al.;

(d) Lots 1 and 2 of block A, of Newman's addition to the town of Rayville, assessed in the name of Mrs. Rosa B. Willis Estate and Mrs. Duffie Willis McGregor;

(e) Lot 116x130 feet in lot 6, block A, of Newman's addition to the town of Rayville, assessed in the name of Mrs. Rosa B. Willis and Mrs. Duffie Willis McGregor.
And that a mandamus do issue accordingly.

It is further ordered and decreed that the adjudication to the town in 1935 for the taxes of 1932 and 1933, on the same property, was without authority of law, and the said adjudication is null and void; and that mandamus issue to J. C. Salmon, clerk of the Fifth district court and ex officio recorder of Richland parish, La., ordering and commanding him to cancel and erase from the records of his office the deed or deeds, or other writings evidencing said adjudication.

It is further ordered and decreed that mandamus issue to William T. Jones, mayor of the town of Rayville, ordering and commanding him to issue and deliver unto plaintiffs a certificate or certificates of redemption, covering the above-described property adjudicated to the town for the 1931 taxes in accordance with Act No. 161 of 1934. All costs of both courts to be paid by defendant town of Rayville.