LAND, J.
 

 Defendant is charged with murder, and appeals from a sentence to death.
 

 Bill No. 1.
 

 The commission appointed by the trial judge to inquire into the sanity of the accused reported that he was sane at the present time, and also at the date of the commission of the offense.
 

 Counsel for defense moved to have stricken out that part of the report of the medical examiners pertaining to the sanity of the accused at the time of the commission of the crime, for the reason that under the law it is within the province of the court, without the aid of the jury, to determine only the question as to the present sanity of the accused.
 

 As the trial judge considered and passed upon only that portion of the report relative to the present sanity of the accused, his refusal to sustain the motion to strike out was proper.
 

 Bills 2, 3, 4, 5, 6, 7, and 8.
 

 These bills are grouped, as they all relate to the confession made by the accused and testimony incident thereto.
 

 It is contended that the confession was not free and voluntary, and that the proper foundation was not laid for the admission of the testimony.
 

 It -is shown that at the time of the arrest
 
 *1013
 
 the defendant was hiding himself in a cotton field, and, when the place of his concealment was discovered, that a deputy sheriff covered him with a rifle, and told him if he moved he would kill him. The clear purpose of this action on the part of the deputy was not to extort or induce a confession from the accused. It was not force or violence de signed to effect any such object, but was a mere precautionary measure upon the part of that officer for his own protection and safety, After the accused had surrendered, there was no offer of violence of any kind, nor threat, promise, nor persuasion made by the sheriff, or any of the deputies with him, and who had accompanied him in making the arrest.
 

 The mere fact that the sheriff had a rifle in his hand and a pistol in his pocket, when the accused made the confession 10 or 15 minutes after the arrest, does not give to the confession the quality or complexion of being forced. The sheriff merely asked the .accused, in an ordinary tone of voice if he had killed Virginia Brown and Enoch Brown. The accused replied that he had, detailing the circumstances surrounding the killing of the woman, and stating that Enoch Brown was accidentally struck by him, and unintentionally killed. This confession was made also in the presence of two deputies who had assisted in making the arrest, who corroborate the sheriff as to the substance of the confession, as well as to its free and voluntary character.
 

 The trial judge states that these officers are experienced men and trustworthy in every particular, and that the defendant is a bold man and familiar with the use of firearms.
 

 The defendant, while on the witness stand, at first denied that he had made the confession, then swore that it was extorted by violence, threats, promises, etc., and finally declared that he could not be made to confess by any officer drawing a pistol on him.
 

 The evidence also shows that after the first confession a subsequent confession was made by the accused to one of the deputies in jail; and also other confessions were made in jail to friends visiting him. The mere incident that the jailer stuck a gun in defendant’s cell, and told him that if he did not clean up his cell he would come in and chastise him, did not constitute force or threats designed to compel or induce a confession, but was clearly intended as a firm means of enforcing prison discipline and sanitary conditions in the jail.
 

 We agree with the trial judge that the evidence shows that proper foundation was laid for the introduction of testimony as to the confession, and that same was freely and voluntarily made.
 

 The objection by the defense to two of the deputies testifying to the-confession, on the ground that they had been excused from the rule sequestering the witnesses, is without merit.
 

 It was a matter within the sound discretion of the trial judge, who cannot be compelled to tie up the business of the court during a murder trial by placing the officer necessary for its operation under rule. State v. Bates, 140 La. 833, 74 So. 562.
 

 Bills 9, 10, 11 and 12.
 

 All of these bills relate to alleged objectionable remarks made by the district attorney in his argument before the jury. The only one of these bills that requires special notice at our hands is bill No. 11, in which it is stated that the prosecuting officer, during the course of his address, said to the jury:
 

 “Book at the crowd, the large crowd of people attending this trial. They did not come here for idle curiosity. A verdict of guilty as charged would meet with their sentiment, and deter negroes from the commissio'n of other crimes.”
 

 The jury was well aware of the fact that the defendant was a negro, as well as of the fact that his victims were of that race. Counsel for defendant objected to these re
 
 *1015
 
 marks,"and moved the court to instruct the jury to disregard the remarks, and to request the district attorney to withdraw them. The remarks of the district attorney were withdrawn, and the jury was instructed by the trial judge not to consider them. Under the circumstances of this particular case, we are of the opinion that the effect of any prejudice which may have arisen from the remarks made was removed entirely from the minds of the jury,* by the instruction of the court and the withdrawal of what was said by the prosecuting officer. The case, however, in our opinion,- would have been different had the defendant been charged with the murder of a white man, as a distinct and. unjustifiable appeal to race prejudice would have been the result, and the presumption of .injury to the accused would have been so strong that it could not be cured by the action of the court in instructing the jury to disregard the remarks of the state’s attorney, and by his withdrawal of same. State v. Thompson, 106 La. 366, 30 So. 805; State v. Robinson, 112 La. 939, 36 So. 811; State v. Williams, 116 La. 65, 40 So. 531; State v. High, 122 La. 530, 47 So. 878; State v. Washington, 136 La. 855, 67 So. 350.
 

 The following remarks to the jury by the district attorney were also objected to by counsel for defense^
 

 “Visualize that old man, Enoch Brown, running to the rescue of Virginia Brown, and visualize the brutal killing of Enoch Brown by AVilliam Thomas. Enoch Brown is a hero, and William Thomas is an infuriated-brute.”
 

 The trial judge overruled the objection. The remarks were justified by the facts of the case. Virginia 'Brown, a defenseless woman, and Enoch Brown, an aged negro, were clubbed to death at night by defendant. That the killing was brutal, and that the defendant was infuriated is apparent. The action of this feeble old man, who died in an attempt to save the life of the woman, manifestly was heroic, as he sacrificed his own life in the defense of another, well knowing the final and fatal consequences to himself.
 

 Counsel for the defense, in pleading for the life of his client, said to the jury that, if they found defendant guilty of a crime which carries a penitentiary sentenpe only, he would not appeal the case; but, if they found' him guilty as charged in the indictment, he would appeal the case to the Supreme Court,, and would try to secure a reversal of the judgment.
 

 The district attorney, in replying to this argument, stated to the jury that:
 

 “The statement of counsel for defendant could1 not be construed as anything but an admission on the part of said counsel that his client was' guilty, and was a mere plea to save his life.”
 

 There is considerable disparity between the statement of the district attorney given above, and the statement of counsel for defendant as to what the district attorney had said to the jury. As the judge a quo has approved the statement made by the district attorney, we cannot accept' the statement attributed to him, made by counsel in the bill, that:
 

 “A. J. Wiley, attorney for the accused, by saying that he would not appeal from a verdict carrying less than capital punishment has admitted the guilt of the accused, and this is the same as an admission or confession by the accused, because it was made by his attorney.”
 

 As a matter of fact, the -jury had before them both the confession of the accused and the admission of guilt made by his attorney in argument.
 

 Under such state of facts, defendant was not prejudiced by the remark of the prosecuting officer.
 

 The district attorney stated to the jury that William Thomas had made voluntary confessions in the jail, while incarcerated, to several persons. This statement was objected to as incorrect, and on the ground that no one, except Mr. Eranklin, the jailer, gave any such testimony, and it was clear that, if
 
 *1017
 
 any confession was made to Mr. Franklin, it was tinder duress. As stated by the trial judge in Ms per curiam to .this bill, Mr. Franklin testified that the defendant on several occasions had made to him and others, in his presence, upon his own initiative, and without being questioned, admissions that he had killed the deceased, and that he (Franklin) made no promise, threats, inducements, or coerced the defendant; that when the witness Franklin, who is the jailer, threatened to whip the defendant, it was about his conduct in jail, and was disconnected with and had nothing to do with any confession regarding the killing. So it appears that the district attorney was well within the record when he made the statement. This is the second time' that defendant has been tried and found guilty of murder as charged. We find no prejudicial error in the record, and it becomes our solemn duty to let the law take its course.
 

 The conviction and sentence are therefore affirmed.
 

 ST. PAUL, J., concurs in the decree.
 

 O’NIELL, O. J., dissents from the ruling on bills 9, 10, and 11.