OVERTON, J.
 

 Defendants were jointly indicted for robbery, committed upon M. A. De Jean, on June 2,1928, and appeal from a sentence, based upon a conviction on that charge. Defendants were tried together; no severance having been requested. While both contended that they were not guilty, their defenses were different. McCullough’s defense was an alibi, and Pearson’s was that he was not particeps criminis in the robbery, but was one of the victims robbed. The record is somewhat confusing, due to- the fact that, in some instances, evidence is attached to bills that has no apparent bearing on the bill to which attached, but, nevertheless, we are able to ascertain the facts from the record necessary to a determination of the case. The record contains ten bills of exceptions and an assignment of error. There are no bills of exception, numbered 1,. 5, 8, and 10, the bills running from 2 to 14, inclusive, with some of the numerals omitted.
 

 We shall consider bill of exception No. 3 first. The ground for this bill is that the state’s witness, L. W. Cooper, should not have been permitted to testify to a confession made by the defendant, McCullough, because the witness did not remember the substance of the confession. The witness was present during the entire time the conversation was had, when the confession was made, and experienced no difficulty in hearing what was said. The witness testified that, while he did not remember the conversation verbatim, he remembered-the substance of it, and, after he had narrated what purports to be the substance of the confession, he said that what he had testified to was the substance of everything that was said at the time. While some of his answers to questions suggest that possibly he did not remember all that was said, yet his evidence as a whole conveys the impression that he did. We think that the witness qualified sufficiently to testify to the confession. It is enough to enable a witness to testify to a confession that he is able to state the substance of it. State v. Desroches, 48 La. Ann. 428, 19 So. 250, State v. Avery, 31 La. Ann. 181. The fact that some of the answers of the witness suggest the possibility that there may be some detail of the confession that he did not remember does not disqualify him from testifying to the confession. State v. Madison, 47 La. Ann. 30, 16 So. 566. As we have said, the evidence of the witness, as a whole, conveys the impression that he remembered the substance of what was said.
 

 Bill of exception No. 4 was taken to the admission of a confession made by McCullough. The confession was objected to on the ground that it was not shown to have been a free and voluntary one. The evidence attached to the bill shows that the proper
 
 *166
 
 foundation was laid for the introduction of the confession by showing that it was made without offering McCullough any inducement or reward to make it, and without using duress in any form to obtain it, or, in other words, it shows that the confession was free and voluntary. No evidence was offered, prior to the ruling made by the court on the objection, here urged, to rebut the foundation laid. However, as the trial progressed, it developed, according to the defendant’s evidence, that he was advised by a local attorney to tell the sheriff all that he knew about the matter, and that, according to McCullough’s construction of the evidence adduced, it showed that the sheriff was going from one defendant to the other, telling each that his eodefendant had confessed. When these developments were brought to light, two confessions by McCullough to the same eifect' had been shown, and McCullough asked the court to instruct- the jury to disregard the evidence of the witnesses by whom the confessions had been shown, for the reason that the confessions were not free and voluntary, and not admissible under section 2 of article 1 of the Constitution. The court refused to give the instructions.
 

 The record does not show that the sheriff, or any of his deputies, went from one defendant to the other,, telling each that his codefendant had confessed; It is possible, however, that, after McCullough had confessed, the sheriff told Pearson of the confession, and'that McCullough had implicated him in the crime, but, if he did, so, it had no effect on Pearson, for Pearson never did confess, but always maintained that he was not implicated in the robbery, nor did he even join McCullough in the motion made by the latter for instructions to the jury. It is unlikely that the sheriff, or any of his officers, told McCullough of any statements made by Pearson, for Pearson’s statements were exculpatory, and in no manner,¡implicated McCullough or any person by-name. -The record does not justify the conclusion that the sheriff, or anj' of his officers, imposed faked confessions by one defendant on the other to obtain acknowledgments of guilt from them. We therefore think that this part of the bill is not well founded.
 

 As relates to the remainder of the bill, it appears that the local attorney, mentioned by defendant in'his evidence, was in the jail about the time the confession was made by McCullough, though whether upon the same day does not appear. It also appears that the sheriff was in the jail at the same time the attorney was, but it does not appear that he was there at the instance, or upon the suggestion, of the sheriff. The only evidence in the record tending to show that the attorney advised McCullough to confess is the evidence of McCullough himself. It does not appear whether the attorney was McCullough’s attorney at the time or not. McCullough’s evidence concerning the advice said to have-been given is conflicting. In the beginning, he testified that the attorney advised him to tell the officers about the robbery “like it ought to be,” and “they would turn him out.” He also testified that he was advised by the attorney to admit his guilt, whether he was guilty or not, and, further, to tell the officers whether he knew anything about the robbery or not, and they would release him. Later, he said that all the attorney did was to ad-' vise him to tell about the robbery, meaning, of course, to tell the officers.
 

 The attorney, who is said to have given the advice, is a reputable attorney. It is incredible that he would advise another to admit his guilt, whether he was guilty or not, or to give information to the officers concerning a robbery, whether he knew anything about it or not. Nor do we -think that the attorney ever advised McCullough to tell the
 
 *168
 
 officers. The conflicting character of the ev-. i'dence and its incredibility fully justified the court in adhering to its ruling that the confessions were voluntary and in refusing the motion to disregard. Moreover, even if all the attorney did, as finally testified to by McCullough, was merely to advise the latter to tell what he knew about the matter, we are not prepared to hold that the confessions were inadmissible for that reason.
 

 Bill No. 2 was taken to the admission in evidence of statements said to have been made by the defendant Pearson, and testified to by the witness Brown, when he was on the stand, over Pearson’s objection that the statements were not voluntary. The bill does not recite what the statements were. The evidence attached to the bill shows that Brown did not testify to any statements made by Pearson, but to 'the confession made by McCullough, and that Pearson asked the court to instruct the jury to disregard the confession as to him, which the court did. However, the next two bills relate to the admission of statements made by Pearson, which are probably the statements that counsel had in mind in presenting this bill for signature.
 

 Bills of exception Nos. 6 and 7 may be considered together. Bill No. 6 shows that the sheriff testified that he did not remember whether he told Pearson that McCullough had confessed and implicated him, but that he might have told him; that he did not inform Pearson that any statements he might make would be used against him; and that upon this ground, and upon the ground that the statements made were involuntary, Pearson objected to their admission. The statements made, as appears from the evidence attached to the bill, were that Pearson first denied that he knew anything about the robbery, or was with McCullough on the night of its occurrence. Later, according to the evidence of th’e sheriff, Pearson told him that he was with McCullough on the night of the robbery, having met him on the gravel road, but denied being at the place where the robbery occurred, or-knowing anything about the crime. Bill No. 7 shows that, while a deputy sheriff was on the stand, he was asked by the state what he told Pearson and what Pearson told him, to which the witness replied (to quote from the evidence attached to the bill) as follows:
 

 “I told Pearson that McCullough said that he and Pearson and the Glaskow boys were to meet at the swimming hole that day and divide the loot, and he said why they robbed him too, and I asked him how much they got off him, and he said $8 or $10, all he had, and I asked him where he got the $3 I took off of him at the jail door, and he said he overlooked that.”
 

 The foregoing question and answer were objected to by Pearson, because the statement, attributed to him, in the answer, was not voluntary, but was induced by the statement of the witness, relative to what McCullough said.
 

 The statements made, and shown by bill No. 6, were shown to have been voluntary by laying the foundation for admission, required before admitting confessions, but it does not appear whether such foundation was laid with reference to the statement made, and shown by bill No.' 7. There is nothing showing that the last statement was made as a result of duress, threats, or even promise. It was unnecessary that a foundation be laid for its admission.
 

 It will be observed that, while the statements are conflicting, all of them are exculpatory. As observed in State v. Oteri, 128 La. 939, 55 So. 582, Ann. Cas. 1912C, 878, “An objection to a confession or admission of guilt on the ground that the state had not laid the proper predicate for the introduction of such evidence has no relevancy to exculpatory
 
 *170
 
 statements made by tbe accused.” See, also, State v. Howard, 127 La. 435, 53 So. 677; State v. Williams, 120 La. 175, 45 So. 94; State v. Picton, 51 La. Ann. 624, 25 So. 375. The fact that the deputy sheriff communicated to Pearson that McCullough had confessed and implicated him did not affect his answer. As observed by the state, the only result of that communication to Pearson was to strengthen him in his denial of guilt. It is needless to say that it was unnecessary for the officers to warn Pearson that his statements might be used against him. State v. Howard, 127 La. 435, 53 So. 677. There was no error in admitting the statements.
 

 Bill No. 9 was taken to the ruling of the court in permitting a witness for the state to testify who had remained in the courtroom during parts of the trial* The witness had not been summoned, for the state knew nothing of his knowledge of the ease, but, when the state obtained that knowledge, it had the witness sequestered with the remaining witnesses. As to whether the witness should have been permitted to testify, under the circumstances, was a matter resting within the sound discretion of the trial court. State v. Foster, 150 La. 971, 91 So. 411, State v. Hogan, 117 La. 863, 42 So. 352. It does not appear that there was abuse of the court’s discretion in this instance.
 

 Bill No. 11 was taken to the ruling of the court in permitting the state to propound to the sheriff, while a witness on the stand, a question, in rebuttal, for the purpose of impeaching Garney Glaskow, a witness for the defense. The evidence sought to be elicited was objected to, because it was not in rebuttal, was hearsay, and, if offered for the purpose of impeachment, was on a point not material. It appears that Glaskow, while testifying for the defense, named the persona he saw with McCullough, at or near the time and place of the robbery, and denied that he saw McCullough and Pearson talking together there, a few minutes before the robbery. The purpose of the question was to impeach Glaskow by showing that he had stated on a prior occasion that he saw the defendant^ talking together, near the scene of the crime, a few minutes before it was committed. The impeachment was obviously upon a material point. The evidence offered was admissible for the purpose of impeachment, and, as it was admissible for that purpose, it was admissible necessarily in rebuttal.
 

 Bill No. 12 was taken to tbe admission of evidence in rebuttal, which the defense contended was- not rebuttal evidence. The purpose of the evidence was to contradict Pearson’s evidence to the effect that he was robbed with the prosecuting witness, and that all the money he had 'was taken from him, by showing that, when he was arrested, he had $3.20 on his person. The evidence was rebuttal evidence, and was admissible for the purpose offered. Moreover, the court at the time of its ruling offered to permit Pearson to introduce evidence in surrebuttal, touching the $3.20, if he saw proper to offer it.-
 

 Bill No. 14 was taken to the overruling of an objection urged by the defendants to a remark made by the assistant district attorney in argument. The remark was that defendants “belonged to a stripe or class of criminals that was experienced and knew how to commit and hide a crime like this.” We gather from the trial judge’s statements, in the present bill, and in bill No. 12, that it was the theory of the state, deduced from the evidence, that Pearson led De Jean, the prosecuting witness, where McCullough was hidden, and, as we appreciate it, disguised, so that McCullough could rob him, and that the robbery of Pearson also by McCullough was not a real, but a fake, robbery, committed for the purpose of protecting Pearson. It was in arguing this theory of the case that the remark was made. It was based apparently up
 
 *172
 
 on the assistant district attorney’s deductions from the evidence, and, as such, was legitimate argument. State v. Conners, 142 La. 206, 76 So. 611; State v. Johnson & Butler, 48 La. Ann. 87, 19 So. 213.
 

 The assignment of error, filed in this court, is based upon the contention that the record does not disclose that the' grand jury that was supposed to have indicted defendants ■ was ever sworn or legally impaneled. Defendants have fallen into error as to the facts on which they base their assignment. As will appear from the first page of the transcript, the grand jury was impaneled on May 14, 1928, by the appointment of John B. Jones, as foreman, and by drawing the names of eleven jurors from the envelope containing the names of the grand jurors. The required oath was administered to the foreman and then to the remaining eleven jurors. The court then, after charging the grand jury, adjourned. The same grand jury, as may fairly be inferred from the minutes, was reconvened on October 2, 1928, and, after the issuance pf an attachment for one of its absent members, and the delivery of the court’s charge, it retired, and on the same day returned the bill of indictment herein, indorsed by its foreman, J. B. Jones. It appears that the grand jury was- regularly impaneled and sworn, and it is sufficiently clear, though could have been made clearer, that the grand jury so impaneled and sworn was the one that returned the bill. Moreover, if defendants thought there were any defects in the impaneling of the grand jury, their remedy was not by an assignment of errors in this court, but by a motion to quash, timely filed in the lower court. State v. Fuller, 164 La. 718, 726, 114 So. 606; State v. Price, 37 La. Ann. 215; State v. Lula Solomon (No. 29684, La. Sup.) 121 So. 607,
 
 [1]
 
 this day decided.
 

 For the reasons assigned, the verdict and the sentence appealed from are affirmed.
 

 [1]
 

 Ante, p. 153.