SANDERS, Justice.
The defendant, Carlos P. Cortez, was charged and convicted of attempted murder. He was sentenced to a term of fifteen years in the Louisiana State Penitentiary. From his conviction and sentence he has appealed, relying upon several bills of exception reserved during the course of the trial.
Defendant reserved Bills of Exception Nos. 1, 3 and 5 to the overruling of a motion for a mistrial, a motion for a new trial, and a motion in arrest of judgment. All of these bills complain of a remark to the jury by the Assistant District Attorney in his closing argument, to-wit: “The modus operandi and the evidence in the case shows that- they are hardened criminals.” The objection is based on the contention that the statement refers to prior convictions and that no evidence of a previous criminal record was adduced since the defendant did not take the stand as a witness in his own behalf. It is the position of the State that the statement does not refer to a prior criminal record and that it constitutes a fair inference drawn from the evidence relating to the actions and conduct of the defendant in the commission of the crime.
In his per curiam the trial judge reviews the evidence at length. The salient portions of his narration are as follows:
The defendant and Alcine Ormsby were charged with the attempted murder of Joseph A. Marino, a pharmacist at Fogarty’s Pharmacy in the City of New Orleans, on February 1, 1960. Prior, thereto on December 7, 1959, Ormsby, in the daylight hours, had committed an armed robbery of the same victim. After searching for narcotics, he forced Marino to open the safe and deliver the contents. While the robbery was in progress, the owner of the pharmacy entered. He was forced . by Ormsby to wait in an adjoining room until the crime was completed. Ormsby was cool, methodical, and unhurried throughout this criminal enterprise.
On the night of the robbery upon which this proceeding is based, Marino had entered his automobile at the premises when Ormsby appeared and said: “Here I am again” or “It’s me again.” Marino recognized Ormsby. He was ordered by Ormsby to get out of the car. Marino seized a loaded revolver from the front seat of his car and fired at Ormsby, one bullet striking him in the abdominal region, and another shattering the butt of his revolver and injuring his fingers. Ormsby fired back into *794 the car at Marino, emptying his pistol as he walked along the sidewalk to a car driven by the defendant, Cortez, which was waiting for him on Broadway Avenue about half a block away. The car sped away. On the escape route Cortez was stopped by two police officers for running a stop sign. He was given a traffic ticket. They testified that Cortez was the driver of the car and that Ormsby was seated beside him holding his stomach. One of them asked Cortez what was the matter with his passenger, to which Cortez replied that he was ill. After receiving the ticket, Cortez drove Ormsby to Baptist Hospital and left him. The police were contacted by the hospital personnel.
The trial judge pointed to three situations in the evidence which he asserted sustained the conclusion that the co-defendants, Ormsby and Cortez, were "hardened criminals”:
“First, the situation in which Appellant was seated in the get-a-way car, facing and listening to and witnessing the firing of the shots. Appellant in that situation knew that something had gone amiss in the robbery plans; that if Ormsby killed anyone it would be murder; that if he continued to stand by for Ormsby that he was taking a serious risk of death in the electric chair; that despite the intensity of the pressures of self preservation Appellant persisted in the crime, stood by the ‘wheel man’s’ usual agreement to wait out the return of his companion in crime regardless of the consequences to himself.
“Respectfully, it seems clear enough that under the pressures and in the danger that Appellant found himself at the time, that Appellant conducted himself with all of the loyalty and rugged determination of a truly tough minded professional criminal.
“Secondly, the tense moments wherein Appellant was halted by the traffic officers, in the immediate vicinity of the crime, within minutes of the crime, with the wounded Ormsby in his car, and the calm and controlled demeanor that enabled Appellant to keep the officer, though professionally trained to suspect crime and criminals, from any suspicion.
“Third, while it was no part of the prosecutor’s recital of the evidence at the time he drew the conclusion in question, it was testified to by Ormsby, who was a witness for himself and Appellant, that he, Ormsby, at the time he was a witness, was 27 years of age; that he had been already convicted of four armed robberies and one crime involving a kidnapping and armed robbery; that he was on parole from the penitentiary on December 7, 1959, the day of the armed robbery of Fogarty’s Pharmacy. Further, the evidence in this case was that having robbed this pharmacy on December 7, 1959, he had returned again to rob it on February 1, I960, the date of the within crime.
"Respectfully, it is a fair inference from the evidence in the case, therefore, that an experienced and dangerous criminal, such as Ormsby undoubtedly was, would not put his life into the hands of a ‘wheel man’ in a dangerous undertaking unless he, Ormsby, was satisfied in his own mind that the proposed ‘wheel man’ possessed all of the qualifications necessary and expected for the role, that is to say, such a dedication to crime and such loyalty to his partner or partners in crime that he would sacrifice his own life rather than ‘chicken out’ on his partners or on his obligations as such ‘wheel man’. In other words, unless Ormsby knew Appellant to be exactly what the evidence in this case proved him to be, a hardened criminal.”
From a review of the evidence as stated by the trial judge, we fully agree that the overruling of the motions was not error.
*795 LSA-R.S. 15:381 provides:
“Counsel may argue to the jury both the law and the evidence of the case, but must confine themselves to matters as to which evidence has been received, or of which judicial cognizance is taken, and to the law applicable to the evidence; and counsel shall refrain from any appeal to prejudice.”
LSA-R.S. 15:382 further provides:
“Counsel have the right to draw from the evidence received, or from the failure to produce evidence shown to be in the possession of the opposite party, any conclusion which to them may seem fit, but counsel have no right to draw from such evidence or suppression of evidence an incorrect conclusion of law.”
We held in State v. McCullough, 168 La. 161, 121 So. 609, that a remark by the prosecution that the defendants belonged to a class of criminals who were experienced, based on deductions from the evidence, was legitimate argument.
In State v. Robinson, 221 La. 19, 58 So.2d 408, 413, reference to the defendant as “this dope peddler” in closing argument to the jury was held not to be objectionable in a prosecution for unlawful possession of narcotics. This Court said:
“We agree with the trial judge that this characterization was warranted by the evidence, and therefore, admissible under Article 381 of the Code of Criminal Procedure, LSA-R.S. 15 :381, which permits counsel to argue both the law and the evidence to the jury, so long as these are confined ‘to matters as to which evidence has been received, or of which judicial cognizance is taken, and to the law applicable to the evidence’.
“It is the settled jurisprudence of this court, under the rules laid down in Articles 381 and 382 of the Code of Criminal Procedure, LSA-R.S. 15 :- 381, 15:382, that while counsel in arguing the case to the jury on both the law and the evidence must refrain from any appeal to prejudice, he may, nevertheless draw such conclusions or inferences as the evidence may warrant; further, that denunciation based upon the evidence is not objectionable.”
We said in State v. Alexander, 215 La. 245, 40 So.2d 232, 234:
“It is a well-settled principle that as a matter of law, the prosecuting officer has the right to press upon the jury any view of the case arising out of the evidence — the Supreme Court is bound to credit jurors with common intelligence, conscientiousness, and sense of duty.”
Counsel for defendant cites no law or jurisprudence in support of his contention that the term “hardened criminals” refers to prior conviction. In our opinion, the argument pressed the point that the defendant was tough and calloused. Thus construed, it was a fair comment on the evidence. We conclude that it was not improper or objectionable.
Bill of Exception No. 2 was reserved to the remarks made by the trial judge in overruling the motion for a mistrial in the presence of the jury which it is contended amounted to an improper comment on the evidence. These remarks are not made a part of the Bill of Exception. Therefore, it presents nothing for review. LSA-R.S. 15:500; State v. Brown, 236 La. 562, 108 So.2d 233.
 Closely related are Bills of Exception Nos. 3 and 4. Bill No. 3 was taken to the overruling of a motion for a new trial grounded in part upon newly discovered evidence. The alleged evidence consisted of the testimony of Ormsby and one Robert Bertram, who were then confined in the Louisiana State Penitentiary, as to the identity of the driver of the get-away automobile, alleged to be a person other *796 than the defendant. Bill No. 4 was reserved to the refusal to grant a writ of habeas corpus ad testificandum directed to the warden of the Louisiana State Penitentiary to produce the two prisoners in court for the purpose of eliciting this testimony. The trial judge requested a showing by means of affidavits of the two prisoners that they would in fact make the identification as alleged. After the showing was not made, he declined both motions. In view of all of the circumstances, there appears to be no abuse of the discretion vested in the trial court.
For the reasons assigned, the conviction and sentence are affirmed.