McCALEB, Justice.
 

 On the night of March 12, 1966 John E. Carter, a 40-year-old white man, was walking on the streets of the City of New Orleans when he was attacked, robbed and brutally beaten by appellant, a member of the Negro race. Ten days later Carter died as a result of brain injuries received in the beating administered by appellant, who was later indicted for murder, tried, found guilty and sentenced to death. He has appealed from his conviction relying upon three of the six bills of exceptions reserved by him below for reversal.
 
 [1]
 

 Bill No. 1 was reserved to the overruling of appellant’s motion to quash the indictment on the ground that the grand jury which returned it was unconstitutionally composed in that “ * * * there were no hourly wage earners
 
 nor
 
 laborers upon said jury.” Further, it was alleged “that there was systematic inclusion and/or exclusion of Negroes composing the said Grand Jury *
 
 * *
 
 ”.
 

 Following the 1958 decision of the United States Supreme Court in Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991, the jury commission and judges of Orleans Parish have, as we stated in State v. Barksdale, 247 La. 198, 170 So.2d 374 (1964), cert. den., 382 U.S. 921, 86 S.Ct. 197, 15 L.Ed.2d 236, “ * * * adopted a practice of jury selection in keeping with the spirit of the law * * * ” announced in that case. In this matter it has been shown by the testimony of Judge Oliver S. Schulingkamp, who selected the grand jury which indicted appellant, that he did not exclude hourly wage earners and laborers or any other economic class from the grand jury, and that the guidelines employed by him in choosing the twelve men to serve on the jury were “Common sense, understanding, a dedication to duty, appreciation of civic responsibility and a willingness to serve.” When asked if any emphasis was placed on the
 
 *1106
 
 occupation of the prospective jurors, the judge replied “To this extent that I felt that a cross section of the community insofar as their economic employment was desirable in that it gave a better balance and prospective and, of course, that included wage earners.” He further stated that he did not select anyone, wage earner or not, who did not express a willingness to serve as a grand juror, that is, “I wanted men of good faith and willing heart to serve * * * ”, and he emphatically testified that he did not exclude anyone from appointment because he was paid by the hour. Eleven of the men who served on the grand jury which indicted appellant also testified on trial of the motion to quash. Some were salaried men, and it was shown that the two of the twelve grand jurors were members of the Negro race.
 

 In view of the foregoing facts, which are uncontradicted, we fail to discern any valid basis for the motion to quash. Defense counsel’s position is that since the members of the grand jury were employed on a salary basis and no one was an hourly wage earner, and since all came from at least a middle-class level of society, nearly all being college men, and no women included, this constituted a denial of equal protection of the law.
 

 In our opinion this proposition is insubstantial. The circumstance that the grand jury was composed of persons representative of a certain social or economic stratum is unimportant so long as persons of the accused’s race have not been intentionally or systematically excluded from service because of their race. Eubanks v. State of Louisiana, supra. For an accused is not entitled under the equal protection clause to be indicted by a grand jury or tried by a petit jury containing members of his own race or of the same or opposite sex or from the same class of society with which he is identified, or who earn their livelihood by a per hour wage, or by the month or by the year. See Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759. The sole requisite, according to our understanding of the many decisions of the United States Supreme Court on this question, is that the accused be indicted and tried by a jury selected without any systematic inclusion or exclusion of members of his own race and that, whenever it is shown that a jury selection plan operates in such a way as to continually result in the complete exclusion of Negroes or any other racial group, “ * * * indictments and verdicts returned against them by juries thus selected cannot stand.” Patton v. State of Mississippi, 332 U.S. 463, 469, 68 S.Ct. 184, 187, 92 L.Ed. 76. The grand jury assailed in the instant matter does not fall within the latter category. Indeed, the evidence shows that the judge selected the grand jury without purposeful inclusion or exclusion of any person because of
 
 *1108
 
 his race, color, creed, station in life, or social or economic standing.
 

 Bill of Exceptions No. 2 was reserved under the following circumstances. A state witness, Peter James, had testified that he was awakened about 10:30 or 11:00 o’clock on the night of the crime by the cursing of a colored man whom he later identified to be appellant; that he dressed and proceeded onto a porch of his second-floor apartment where he saw appellant kicking and stamping on a man in the gutter and that he was picking up a tire and throwing it down on his victim. This witness was cross-examined at some length by defense counsel. Subsequently, on recross-examination, the witness was asked:
 

 “Q. And you were approximately twenty feet away from these persons, the man in the gutter and the man beating him?
 

 A. Yes.
 

 Q. This includes the height of your porch too?”
 

 Whereupon the court stated:
 

 “We’re going to go into all of this again, Mr. Shiell. Let’s get on to something else. You asked him everything but the color 'of the porch as if it had any relevancy.' ■ Let’s get on to something else.”
 

 The objection was made that the court’s remark was prejudicial and, when it was overruled; Bill No. 2 was taken.
 

 Appellant’s counsel contends that, since James testified he had witnessed the commission of the crime from his balcony across the street, the line of questioning was extremely relevant, particularly so because the witness was opinionated and hostile to the defense, and for these reasons much latitude should have been allowed him in his attempt to discredit James’ testimony. Counsel further asserts that the comment of the judge relating to the height of the porch “as if it had any relevancy” suggested to the jury that he (the judge) believed the testimony of this witness to be beyond contradiction, carried the hint that the judge personally believed appellant guilty and had the effect of belittling defense counsel before the jury. Additionally, counsel charges that the judge’s remark is a “comment of a form on the evidence in improper fashion.”
 

 We find no merit in the bill. Article 369 of the 1928 Code of Criminal Procedure, which is applicable to this case, vests the trial judge with a sound discretion to stop prolonged, unnecessary and irrelevant examination .of a witness “ * * whether such examination be direct or cross, and even though no objection be urged by counsel.” The record shows that James had been fully examined by both the prosecutor and defense counsel with respect to his eyewitness observations on the night of the commission of the crime, and he had testified on direct examination he-
 
 *1110
 
 was about twenty feet away from appellant when he was on the porch. On recross-examination he reiterated that he was twenty feet from the man lying in the gutter and the man beating him, and it was at this point, when he was asked whether the distance included the height of the porch on which he was standing, that the judge interrupted with the statement made the subject of this bill.
 

 A reading of the entire examination of the witness, James, does not reveal that defense counsel was unduly limited in his cross-examination. In fact, counsel’s interrogations, through which he sought to discredit the witness, were not fruitful and, it was evidently for this reason, his questions became redundant. It was at this point that the judge intervened, suggesting that counsel direct his questions along another line.
 

 Albeit much latitude is to be allowed in the cross-examination of an adverse witness, we are unable to say on the record before us that the judge has abused his discretion in curtailing the line of examination pursued by counsel. On the contrary, it appears to us that the examination had reached the stage at which the judge could properly intervene and restrict further questioning of the witness as to where he was standing and his estimate of the distance in feet between that place and where the beating was being administered.
 

 Counsel’s other charge, that the remark of the judge constituted a comment on the evidence, is not well founded. The statement of the judge that counsel had asked the witness everything but the color of the porch “as if it had any relevancy” was not a comment on the evidence because no evidence had been adduced concerning the color of the porch.
 

 Bill No. 3 was not briefed as defense counsel evidently realized it was totally without substance. It was taken when the judge permitted one of the arresting officers to examine his police report to refresh his memory as to the name of the street on which the apartment house was situated where the arrest of appellant was made. Counsel objected, stating that he would like to determine “ * * * if looking at the report would indeed refresh his (the officer’s) memory * * * The judge then offered to permit counsel to examine the officer on this point but counsel declined, stating the test is whether or not examination of the report would refresh his memory as to prior recollection.
 

 Since the officer had testified that reference to the report would refresh his memory as to the name of the street on which the apartment is located, the objection was pointless. If counsel had any doubts on this score, he should have availed himself of the judge’s offer to let him cross-examine the witness as to the nature of his recollection.
 

 
 *1112
 
 Bill'No. 4 is not briefed, and it'is likewise without merit. It was taken when the judge permitted one of the arresting officers to testify in rebuttal that, when appellant was questioned on the day following the commission of the crime, prior to his arrest at the apartment, he stated that he h.ad been out drinking until 11 o’clock on the previous night. Counsel objected to this testimony on the ground that the prosecution had not first laid the predicate for the admission of this oral statement by showing that it was made voluntarily and not in violation of appellant’s constitutional rights. The bill perfected by counsel after his objection was overruled also shows erroneously, as pointed out by the judge in his per curiam, that appellant’s statement was made
 
 after
 
 his arrest when, in truth, it was made
 
 before
 
 his arrest.
 

 It was wholly unnecessary under our law, R.S. 15:451 and Section 11 of Article I of the Louisiana Constitution, for the state to lay a foundation for reception of appellant’s oral statement in evidence for the reason that the statement, that he had been out drinking the previous night until 11 o’clock, was not an admission of an inculpatory fact or an express admission showing the existence of criminal intent. See State v. Andrus, 250 La. 765, 199 So.2d 867. Although far from clear in its purpose, the statement might be regarded as an attempt on the part of appellant to provide an alibi for himself, i. e., an effort to convince the officers that he had returned to his home at 11 o’clock and, hence, was not in any way connected with the robbery and beating of Carter, which subsequently occurred between 11 p. m. and 2 in the morning. Viewed in this way, it could be regarded as exculpatory; otherwise, it could only be considered as a mere statement having no bearing whatever on guilt or innocence.
 

 The statement was clearly admissible in rebuttal to discredit the testimony given by appellant and one Irene Davis to the effect that they had returned to the Davis apartment together from Margie’s Playhouse on the night of the crime at about 1:30 a. m, and that neither one had told the police on the morning of the arrest that appellant was in bed sleeping when Irene Davis and a women named Johnny Bee Williams arrived at the apartment the night before.
 

 Nor does the statement given by appellant to the police officer on the day after commission of the crime come within the guidelines of the decision of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). While it is true that the Miranda decision applies to exculpatory as well as inculpatory statements, the procedural safeguards established therein are applicable only to statements “ * * * stemming from custodial
 
 *1114
 
 interrogation of the defendant * * *
 
 ”
 

 [2]
 

 If the statement can be regarded as exculpatory, it still is not covered by the protective shield of the Miranda pronouncement, inasmuch as it was given to the police officer before appellant’s arrest at a time when the police were endeavoring to locate the perpetrator of the crime.
 

 In rebuttal argument for the state, the assistant district attorney referred to appellant as an animal and said: “Who’s safe in this city with men like him on the street?” Defense counsel immediately objected to these statements and demanded that the judge declare a mistrial. When overruled, counsel reserved Bill of Exceptions No. 5.
 

 The bill is insubstantial. Under Articles 381 and 382 of the 1928 Code of Criminal Procedure, counsel may argue to the jury both the law and the evidence in the case and have the right to draw from the evidence received any conclusion which to them may seem fit so long as they do not appeal to racial prejudice or comment on the accused’s failure to take the stand. The evidence in this case shows that appellant beat and kicked Carter time and again as the latter lay helpless and unconscious; that at a later time he returned and continued kicking and beating the helpless man with a tire while he lay almost submerged in water in the rain-filled gutter, cursing and reviling his victim and swearing he would kill him.
 

 The statement of the prosecuting attorney that appellant was an “animal” and the question he asked the jury, “Who’s safe in this city with men like him on the street?”, were fully justified by the evidence. This Court has held on many occasions that invective remarks by a prosecuting attorney are permissible when supported by the evidence in the case. State v. Maney, 242 La. 223, 135 So.2d 473 (narcotic fiend) ; State v. Cortez, 241 La. 610, 129 So.2d 792 (hardened criminals) ; State v. Hills, 241 La. 345, 129 So.2d 12 (primitive beast of the jungle) ; State v. Davis, 178 La. 203, 151 So. 78 (rats) ; State v. Thomas, 161 La. 1010, 109 So. 819 (infuriated brute) ; State v. Meche, 114 La. 231, 38 So. 152 (incarnate devil).
 

 Bill No. 6, taken to the overruling of a motion for new trial is based upon the other bills reserved and heretofore discussed and, hence, presents nothing for review.
 

 The conviction and sentence are affirmed.
 

 [1]
 

 . Since Bills Nos. 3, 4 and 6 have neither been briefed nor argued in this Court, it would be in order to consider them abandoned. See State v. Henry, 250 La. 682, 198 So.2d 889. However, as this is a capital case, we shall nevertheless discuss the merits of the complaints in all the bills reserved below.
 

 [2]
 

 . The majority opinion in that case explains : “By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.”