470 So.2d 413 (1985)
STATE of Louisiana, Plaintiff-Appellee
v.
Paul A. THOMAS, Defendant-Appellant.
No. CR84-765.
Court of Appeal of Louisiana, Third Circuit.
May 15, 1985.
*415 Richard P. Weimer, Lafayette, for defendant-appellant.
Carrol Spell, Jr., Asst. Dist. Atty., Lafayette, for plaintiff-appellee.
Before STOKER, LABORDE and KING, JJ.
LABORDE, Judge.
Defendant Paul Thomas was indicted for second degree murder in violation of La. R.S. 14:30.1. On May 25, 1982, he went to trial before a twelve person jury. The jury found defendant guilty of manslaughter. For sentencing, defendant waived the legal delays and the trial court sentenced him, on June 1, 1982, to a term of twenty-one years at hard labor. He now appeals on the basis of eight assignments of error. We affirm the conviction, reverse the sentence, and remand for resentencing.

FACTS
Prior to the incident giving rise to this case, the defendant had been living with the victim, Carol Jean Batiste, for five years. They had one child together and were expecting another.
An altercation between the defendant and his girlfriend occurred on September 26, 1981. The problem was related to several phone calls from an unknown man. A *416 struggle ensued and Ms. Batiste was fatally shot in the head.
Defendant claims that the victim, a physically much larger person than himself, had a butcher knife in hand, and, in an attempt to disarm her, the gun accidentally discharged.
Defendant asserts the following assignments of error:
1. Trial court erred in excluding Detective Robert Johnson from its order sequestering witnesses.
2. Trial court erred in not permitting defense counsel to question Detective Michael Dibenedetto about his advice of rights of defendant.
3. Trial court erred in failing to suppress a statement made by defendant to Detective Robert Johnson.
4. Trial court erred in refusing to allow defense counsel to question Detective Robert Johnson as to whether defendant was advised of the purpose of the statement.
5. Trial court erred in permitting a taped version of the statement to Detective Robert Johnson to be played to the jury and in admitting the tape into evidence.
6. Trial court erred in permitting the jurors to have a copy of the transcript of the statement to Detective Robert Johnson and in allowing the jurors to read the copy of the transcript as the tape was played in court.
7. Trial court erred in allowing the state to question witness Carolyn Edwards as to whether the victim was pregnant at the time of the alleged offense.
8. Trial court erred in imposing an excessive sentence unsupported by the record and in failing to articulate the reasons for the sentence.

ASSIGNMENT OF ERROR NO. 1
By his first assignment of error defendant argues that the trial court erred in excluding Detective Robert Johnson from its sequestration order.
The following is the transcription of defendant's objection to the exemption of Detective Johnson:
"ON MOTION OF THE ATTORNEY FOR THE DEFENDANT ALL WITNESSES SUBPOENAED IN THIS MATTER TO TESTIFY WERE PLACED UNDER THE RULE OF SEQUESTRATION AFTER BEING DULY SWORN BY THE CLERK AND INSTRUCTED ACCORDINGLY.
BY MR. SPELL [attorney for the State]:
We ask that Detective Johnson be excused from the rule.
BY MR. BEARD [attorney for defendant]:
Your Honor, that's the man that got the statement that's in question. He took the statement, he was there. I think that probably would defeat the rule. We think that he should be included.
BY THE COURT:
Of course, the State is entitled to be assisted by one of the officers. Your objection is when we get to the point of determining the voluntariness of the confession or statement.
BY MR. BEARD:
Yes.
BY MR. SPELL:
He will be the first one to testify as to the conditions surrounding the taking of the statement, Your Honor. I don't think he will hear anyone else's testimony.
BY THE COURT:
I will allow him to assist the State until we get to that portion of the case. If necessary I will sequester him."
"The right to have witnesses sequestered is an important right which implements the use of cross-examination as a truth-testing device." In re Giangrosso, 395 So.2d 709, 712 n. 4 (La.1981). Its purpose is to prevent witnesses from being influenced by prior testimony and to strengthen the role of cross-examination in *417 developing the facts. State v. Johnson, 438 So.2d 1091, 1096 (La.1983). Therefore, upon the motion of either party, the trial court shall order that the witnesses be sequestered. LSA-C.Cr.P. art. 764. However, the trial court, in the interest of justice or for a good cause, has discretion to exempt a witness from the order. E.g., In re Giangrosso, 395 So.2d at 711-12. And, "by making exemption from sequestration discretionary with the [trial] court, ... the burden [is] on the party seeking the modification to show that the `interest of justice' would be served by exempting the witness." Id. at 712.
In the present case, the trial court permitted only one police officer to remain in the courtroom in order to assist the State with the presentation of its case. The assistance of one police officer either for the prosecution or for the court has been held by the Louisiana Supreme Court to be "good cause" for an exemption from a sequestration order. See State v. Ferguson, 240 La. 593, 124 So.2d 558, 567-68 (1960) (on rehearing), cert. denied, 366 U.S. 913, 81 S.Ct. 1089, 6 L.Ed.2d 237 (1961); State v. Thomas, 161 La. 1010, 109 So. 819, 821 (1926); cf. In re Giangrosso, 395 So.2d 709, 712 (La.1981), State v. Lewis, 250 La. 876, 199 So.2d 907, 910-11 (1967); State v. Carter, 206 La. 181, 19 So.2d 41, 43-45 (1944). We find that the trial court, in the case at bar, had good cause to exempt Detective Johnson from the order of sequestration.
However, our inquiry does not end here. Notwithstanding the fact that the trial court has good cause to exempt a witness from an order of sequestration, if a defendant is severely prejudiced by the exemption, the prejudice may outweigh the court's good cause and the witness should not be exempted. We must reverse defendant's conviction if he bears the burden of proving his prejudice outweighs the trial court's good cause. At trial, defendant asserted that his ability to find inconsistencies during cross-examination of the detective concerning the conditions surrounding the taking of the confession would be destroyed by the detective's presence. The trial court specifically recognized the potential problem resulting from the presence of Detective Johnson during testimony. Therefore, it correctly qualified the exemption and, upon defendant's objection at the time that there would be testimony about the confession, it was prepared to sequester the detective. Our review of the record finds both no testimony concerning defendant's confession by any witness other than Detective Johnson and no subsequent objection by defendant. Therefore, as related to testimony about the confession, defendant was not prejudiced by the exemption of Detective Johnson from the order of sequestration.
In brief, defendant asserts: that Detective Johnson testified as to defendant's mental and physical state and to what he, Detective Johnson, observed at the crime scene; that the detective was allowed to remain in the courtroom while other witnesses testified; and that all these other witnesses testified as to the above two points.
The record shows that when Detective Johnson took the stand to testify, defendant omitted to question the detective's eligibility as a witness on those two points. If defendant had objected when Detective Johnson either took the stand or when he was questioned on those points, the trial court could have restricted the detective's testimony to that part which was not influenced by prior testimony.
"The contemporaneous objection rule has two purposes:
(1) to put the trial judge on notice of the alleged irregularity so that he may cure the problem and
(2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection."
State v. Thomas, 427 So.2d 428, 433 (La. 1982) (on rehearing) (citations omitted). Both purposes were thwarted here. Therefore, defendant's failure to object at the *418 time of Detective Johnson's testimony precludes consideration of this claim. See State v. Anderson, 440 So.2d 205, 222 (La. App. 3rd Cir.), writ denied, 444 So.2d 1241 (La.1983); State v. Ricks, 242 La. 823, 138 So.2d 589, 592 (1962); State v. Ferguson, 240 La. 593, 124 So.2d 558, 568 (1960) (on rehearing), cert. denied, 366 U.S. 913, 81 S.Ct. 1089, 6 L.Ed.2d 237 (1961). We also find that defendant has failed to make any showing that he was prejudiced by a defective sequestration. LSA-C.Cr.P. art. 921. The record shows that, even if we discount Detective Johnson's testimony, all the sequestered witnesses testifying at trial substantially verified each other's testimony.
Defendant's assignment of error no. 1 lacks merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 4
By assignments two and four the defense complains that the trial court erred when it limited the defendant's questioning of two of the state's witnesses. One assignment relates to the questioning of Detective Dibenedetto concerning his understanding of the Miranda warning. The other assignment involves events during the cross examination of Detective Johnson.
LSA-R.S. 15:275 provides:
"In the discipline of his court, the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel."
Unless an abuse of discretion is shown in the trial court's control of the examination of a witness, the conviction will not be reversed. State v. Chapman, 410 So.2d 689, 700 (La.1981), affirmed, 436 So.2d 451 (La.1983).
The counsel for defendant argues that he should have been allowed to question Detective Dibenedetto about the detective's understanding of the Miranda warning in order to determine what Detective Dibenedetto meant when the detective said that the defendant understood his rights.
Detective Dibenedetto testified that as the defendant was leaving the house, defendant stated that he had just shot his "old lady." The statement was spontaneous and not made in response to questioning by the detective, therefore the defendant's understanding of the Miranda warning was irrelevant. See State v. Robinson, 384 So.2d 332, 335 (La.1980). The detective's understanding of the Miranda warning is even further off the point. Therefore, the trial judge did not abuse his discretion.
During the cross-examination of Detective Johnson the state objected twice to defense counsel's conduct on the grounds of irrelevancy. The trial judge sustained both objections. Both instances involved situations where counsel for defendant was not questioning the witness, but was stating facts unrelated to whether defendant understood the purpose of taping the interview conducted by Detective Johnson. The record shows that the trial court in no way prevented the defendant from questioning the witness. Since the defendant was not prevented from questioning the detective, this argument is groundless.
Assignments of error nos. 2 and 4 are without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant's third assignment of error concerns the trial court's decision to allow the state to introduce a statement made by the defendant. Two related arguments are made by the defendant. First, he contends that the statement was made because of coercion by the police. Second, counsel for defendant claims that the defendant lacked the mental capacity to knowingly and voluntarily waive the rights involved.
In order for a confession to be admissible into evidence, the state must affirmatively show that it was free and voluntary and must rebut the defendant's specific allegations of undue influence. LSA-R.S. 15:451; State v. Narcisse, 426 So.2d 118, 125 (La.), cert. denied, ___ U.S. ___, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); State v. Serrato, 424 So.2d 214, 221 (La. *419 1982). The trial court in deciding whether the confession is admissible, must consider the totality of the circumstances of the case. Id. at 221. Once the trial court has considered the credibilities and weight of testimony regarding the voluntariness of a confession, its decision on that issue is accorded much discretion and will not be overturned on appeal unless it is unsupported by the evidence. State v. Benoit, 440 So.2d 129, 131 (La.1983).
The defendant argues that the confession was made because of a promise to "go easy on him." Counsel for defendant states in his brief that the defendant testified at trial that Detective Johnson made such a promise. He is correct in pointing out that direct or implied promises are constitutionally impermissible. State v. Jackson, 414 So.2d 310, 312 (La.1982). However, counsel for defendant has apparently read into the defendant's testimony more than is actually there. Although the defendant testified as to some vague advice given by the officers, the record contains no mention of a promise. Instead the record shows that the defendant testified that the officers made statements to the effect that it might be "best for him" if he cooperated by giving a statement. The Louisiana Supreme Court has held that "statements of this type, rather than being promises or inducement designed to extract a confession, are more likely musings not much beyond what this defendant might well have concluded for himself." State v. Petterway, 403 So.2d 1157, 1160 (La.1981).
Here the comments made by the officers did not contain implied promises of leniency, but were mere mild exhortations to tell the truth. Therefore, this argument is without merit.
The second contention asserted by counsel for defendant is whether defendant had the mental capacity to knowingly and voluntarily waive his rights. Counsel for defendant points to several facts which he claims deprived defendant of the necessary capacity. He cites: the short period of time between the crime and statement, the fact of being handcuffed to a wall, the emotional trauma after being informed of his girlfriend's death, and moderate mental retardation or low intelligence as contributing to this lack of capacity. Of these factors, none in and of themselves vitiate a knowing and voluntary confession. See State v. Burkhalter, 428 So.2d 449, 456 (La.1983); State v. Brogdon, 426 So.2d 158, 167 (La.1983); State v. White, 399 So.2d 172, 175 (La.1981). The critical factor is whether the defendant was able to understand the rights explained to him and, from that, make a knowing and voluntary statement. State v. Benoit, 440 So.2d 129, 131 (La.1983).
The state's evidence as to the voluntariness of the defendant's statement consisted of Detective Johnson's testimony. Detective Johnson testified that defendant appeared a "little nervous" but, after several explanations, the detective felt that defendant understood all of his constitutional rights. This was contradicted by the defendant's testimony in almost every respect.
In light of the contradictory testimony, a determination of credibility had to be made. From the record it is clear that the trial court gave more weight to the state's witness. We defer to the trial court's determination because the record does not indicate that the trial court abused its discretion. Therefore, assignment of error no. 3 lacks merit.

ASSIGNMENT OF ERROR NO. 5
The argument advanced in the defendant's fifth assignment is that the taped statement was so "fraught with omission" as to not present a complete picture. The argument is without merit.
The state is not required to produce non-existent portions of a confession or portions which cannot be recalled. State v. Marmillion, 339 So.2d 788, 793 (La.1976).
The omissions in the recording were the result of the defendant's failure to project his voice, rather than an effort on the part of the state to introduce less *420 than the full recording. The record indicates that it was very difficult to communicate with defendant. Defendant would sometimes take a rather long time before answering a question and, when he would answer, he had a tendency to mumble. The inarticulable statements on the tape were very short in duration. This makes it improbable that any significant information was lost.
In that the state is not required to present every word uttered by the defendant and the "omissions" are relatively insignificant, assignment of error no. 5 lacks merit.

ASSIGNMENT OF ERROR NO. 6
The sixth assignment of error concerns the trial court's decision to allow the state to present to the jurors printed transcripts of defendant's statement to read while a tape recording of the statement was played. Two arguments are presented.
Defendant first argues that the transcript was not the best evidence. The transcript need not be the best evidence, where it is provided as a convenience to the jury in following the playback of a recorded statement. State v. Burdgess, 434 So.2d 1062, 1066 (La.1983); State v. Snedecor, 294 So.2d 207, 210 (La.1974).
The second part of this assignment concerns the state's failure to lay a foundation for the transcript. We question whether a foundation is required for the transcript considering the fact that a proper foundation was laid for the introduction into evidence of the tape recording and that the main purpose of the transcript was to assist the jury in following the tape recording. However, even if the State failed to lay a proper foundation for the transcript, without prejudice resulting from this failure, the ruling of the trial court may be considered harmless. LSA-C.Cr.P. art. 921; State v. Johnson, 286 So.2d 358, 359 (La.1973).
Defendant does not explain how the introduction of the transcript could have prejudiced him. Although the transcript was introduced into evidence, its main purpose was to assist the jury in following the taped statement of the defendant. Therefore, any inaccuracy between the transcript and the recording would have been obvious. The jury heard the tape of defendant's statement twice. After the first playing some jurors indicated that they could not hear or understand portions of the tape. The court furnished transcripts of the tape to the jury and allowed them again to hear the tape while following the transcript. The court admonished the jurors to listen closely to catch any possible errors in the transcript and that the tape "is the real meat of the thing ...." The defendant can show no prejudice by the court's action. Therefore, assignment of error no. 6 lacks merit.

ASSIGNMENT OF ERROR NO. 7
Defendant argues that the trial court erred in admitting irrelevant testimony related to the victim's condition.
At trial, defendant, during cross-examination of Carolyn Edwards, made the victim's size an issue. When the state on redirect brought out the fact that the victim's size was in part due to her pregnant condition, the defendant objected on the grounds of irrelevancy. The objection was overruled.
LSA-R.S. 15:441 provides:
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
The ruling of the trial court on whether evidence is relevant is accorded much discretion and will not be disturbed on appeal in the absence of a clear abuse of this discretion. State v. Chaney, 423 So.2d 1092, 1100 (La.1982).
Defendant claimed that he shot the victim in self defense. The relevancy of the victim's pregnancy relates to its contribution to her size and inability either to attack defendant or to defend herself. The *421 ruling of the trial court did not involve an abuse of discretion. Therefore, assignment of error no. 7 lacks merit.

ASSIGNMENT OF ERROR NO. 8
In this assignment of error it is defendant's contention that the trial court erred in failing to articulate the reasons for sentencing and in imposing a sentence which is unsupported by the record and, therefore, is excessive.
Defendant was sentenced to a term of 21 years at hard labor for the crime of manslaughter. This is the maximum term that can be imposed for such a crime. LSA-R.S. 14:31.
We note that the trial court did not order and, therefore, did not review a pre-sentence investigation report before it determined the sentence it imposed upon defendant. A pre-sentence investigation is not a right of the accused and is not mandated by law. State v. Bell, 377 So.2d 275, 281 (La.1979). In fact, the trial court, in its reasonable discretion, may deny a request by either party for a pre-sentence investigation. Id; State v. Wimberly, 414 So.2d 666, 671 (La.1982). In the present case, defendant made neither a motion nor any other request for a pre-sentence investigation. Further, the record shows defendant waived the required delays, as stated in LSA-C.Cr.P. art. 873, between conviction and sentencing and we find that this waiver implies defendant saw more benefit from prompt sentencing by the trial court than from sentencing after a pre-sentence investigation.
Without a pre-sentence investigation, the trial court must rely on the record in its consideration of the factors stated in LSA-C.Cr.P. art. 894.1. The trial court's reasons for imposing a maximum sentence for the crime of manslaughter were as follows:
"The Court renders this sentence because of the fact that the defendant was convicted by a jury, because of the seriousness of the crime, the killing of an individual, and because the Court is of the opinion that the only proper and just sentence in this matter would be incarceration. It was judicially established that the accused is 27 years of age."
The above shows that the trial court failed to fulfill the goal of article 894.1 C. It did not satisfactorily articulate a factual basis for its sentencing choice. However, even in the absence of adequate compliance with article 894.1, this court need not remand for sentencing where the record clearly supports the sentence imposed. State v. Fontenot, 438 So.2d 1301, 1302 (La.App. 3rd Cir.1983).
We find that the record in this case fails to state sufficient information from which we can make a determination, based on the nature of the offense, the offender, and the proportionality of the penalty to penalties imposed in similar cases,[1] that a sentence of twenty-one years for the crime of manslaughter is not excessive. Therefore, we shall remand this case to the trial court to make, in accordance with article 894.1, a full consideration and adequate articulation of the reasons for imposing a sentence of 21 years. In that respect, we suggest that the trial court review the post-sentence investigation report that was required by law to be prepared.[2]See LSA-C.Cr.P. art. 876.

*422 DISPOSITION OF THE CASE
For the foregoing reasons, we affirm the conviction of defendant but reverse the sentence imposed upon him. We remand this case to the trial judge for resentencing in accordance with the law as stated in assignment of error no. 8.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] See State v. Childs, 466 So.2d 1363, 1365-66, 1367 n. 1 (La.App. 3rd Cir.1985).
[2] Article 876 requires a prompt post-sentence investigation in felony cases in which no pre-sentence investigation is ordered and a substantial sentence is imposed. LSA-C.Cr.P. art. 876 comment (a).

By law, the post-sentence investigation report is delivered to the sentencing court. If the trial court, after reviewing the report, finds factors that would effect the appropriateness of the sentence imposed, it may either increase or decrease the sentence prior to the beginning of execution of the sentence. LSA-C.Cr.P. arts. 881 and 916(3). We recognize that the trial court's authority to amend the sentence is limited by LSA-C.Cr.P. art. 916, which divests the trial court of jurisdiction upon the entering of the order of appeal. However, under article 916(2), the trial court retains jurisdiction to correct a deficiency in the record. Since the trial court usually grants the order of appeal, it is aware when the assignments of error include a claim that a sentence is excessive. In such a case, the trial court may lawfully supplement the record with information gained from the post-conviction report that can assist our review on appeal. In this case, such action by the trial court might have avoided the necessity to remand.